# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

David C. Warth,

                    Plaintiff,

                                        Case No. 1:23-cv-5072-MLB

v.

Gwinnett County Public Schools,
Gwinnett County School Police,
Thomas Williamson, and Brittney
Dewey,

                    Defendants.

_____/

## OPINION & ORDER

Defendant Brittney Dewey was Plaintiff's special education teacher at Brookwood High School from 2012 to 2014.  (Dkt. 1-1 at 3, 99–100.) In late 2014, she learned that Plaintiff—who suffered from autism spectrum disorder—had "lingering feelings [about] his time spent in special education." (Dkt. 1-1 at 3, 100.)  She met with him and the school principal to discuss the issue in February 2015.  (Dkt. 1-1 at 100.)  At the end of the meeting, Plaintiff said the discussion did not go "the way [he] planned." (Dkt. 1-1 at 100.)  The next day at school, Defendant Dewey

noticed Plaintiff "loitering outside a trailer [she] taught in, . . . giving [her] a death stare." (Dkt. 1-1 at 100.) She immediately notified a school administrator. (Dkt. 1-1 at 100–101.)

A few weeks later, Plaintiff's therapist called the school to report Plaintiff "wanted to kill" Defendant Dewey and had "made movement to find [her] at [her] place of employment." (Dkt. 1-1 at 101.) Defendant Dewey obtained a copy of the therapist's notes, which said Plaintiff "fixated on [Defendant Dewey] as a specific target," "wanted to kill [her]," and "spent little time discussing any other aspects of his life outside of [her] classroom." (Dkt. 1-1 at 101.) Based on this, a court granted Defendant Dewey a one-year temporary protective order ("TPO") against Plaintiff beginning March 2015. (Dkt. 1-1 at 61–62, 93, 102.) Plaintiff did not oppose the TPO. (Dkt. 1-1 at 63, 101–102.)

In September 2016, Plaintiff—now a college student—went to a CVS store and bought a fake beard, a fake mustache, a hairnet, latex gloves, and a hat. (Dkt. 1-1 at 3–4, 61.) He put these things on—along with some sunglasses—and walked towards Brookwood High School, allegedly to obtain a copy of his school records. (Dkt. 1-1 at 4, 61–63.)

As he walked, a CVS employee and a passerby called the police to report Plaintiff's activity. (Dkt. 1-1 at 61, 103.)

A school security officer stopped Plaintiff at the back of Brookwood High School, "within feet of [Defendant Dewey's] personal vehicle" and "about 100 yards from [the] trailer where she teaches." (Dkt. 1-1 at 4, 61, 93, 103.) Plaintiff tried to run, but the security officer chased him into an adjacent neighborhood where Defendant Thomas Williamson (a school resource officer) and other law enforcement officers soon arrived. The officers asked Plaintiff who he was and why he was at the school. (Dkt. 1-1 at 4.) Plaintiff did not respond. (Dkt. 1-1 at 4.) The officers then arrested Plaintiff, searched him, found his ID, and removed the items from his face and head. (Dkt. 1-1 at 4.) Defendant Williamson recognized Plaintiff, took over the arrest, notified Defendant Dewey, concluded Plaintiff came to see her, and obtained a warrant to arrest Plaintiff for stalking. (Dkt. 1-1 at 4, 103, 20.) Plaintiff bonded out of jail on the condition that he have no further contact with Defendant Dewey. (Dkt. 1-1 at 7.)

On December 13, 2016, the Gwinnett County Solicitor's Office charged Plaintiff with stalking Defendant Dewey, criminal trespass, and

wearing a mask in public.  (Dkt. 1-1 at 7, 39.)  Defendant Dewey obtained another TPO against Plaintiff on January 31, 2017.  (Dkt. 1-1 at 7.) Less than a week later, on February 6, 2017, Defendant Dewey received an anonymous email instructing her to dismiss "all of [her] civil and criminal cases"—including any "specific court orders [she] currently ha[d] in place"—and "never . . . take legal/police/state action again for the rest of [her] life."  (Dkt. 1-1 at 8, 45–51.)  The email repeatedly said Defendant Dewey—or someone "important" to her—would "be dead within 24 hours" if she told anyone about the email or did not comply. (Dkt. 1-1 at 45.)  The email also said "[w]e are an independent group who handles legal situations like the one you've caused," "[t]he defendants and respondents in your cases have not requested these services from us," "[t]his message was not sent by these respondents and defendants," and "[w]e have chosen to do what we feel is best for these people."  (Dkt. 1-1 at 47.)  The email concluded by warning Plaintiff to "consider just how closely you're actually being watched" and referencing "a photo we took of you in the Walmart parking lot next to your house."  (Dkt. 1-1 at 51.)  Plaintiff alleges he had nothing to do with this email.  (Dkt. 1-1 at 9.)

Defendant Dewey immediately took the email to Defendant Williamson, who—without further investigation—concluded Plaintiff wrote it. (Dkt. 1-1 at 9.)  At Defendants' request, the Gwinnett County Solicitor's Office filed a motion to revoke Plaintiff's bond based on the email. (Dkt. 1-1 at 10–11.)  Before the court could rule on that motion, Plaintiff pled guilty to the three charges against him (stalking, trespass, and wearing a mask) and was sentenced to 90 days in jail plus probation. (Dkt. 1-1 at 11, 53–70.)[1]

Over the next week, Defendant Williamson and other law enforcement officers executed search warrants at Plaintiff's college dorm room, Plaintiff's college IT Department, and Plaintiff's family home (twice). (Dkt. 1-1 at 12–16, 72, 78–79.)  The officers seized more than 20 electronic devices, searched them, obtained other information from Plaintiff's college IT Department, and spoke to Plaintiff's neighbors, but

---

[1] Plaintiff pled guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25 (1970), which allows a defendant to "plead guilty while also claiming his innocence or simply electing to remain silent."  *Key v. Georgia Dep't of Admin. Servs.*, 798 S.E.2d 37, 40 (Ga. Ct. App. 2017); *see In re B.C.*, 777 S.E.2d 52, 52–53 (Ga. Ct. App. 2015) ("An *Alford* plea allows an individual accused of a crime to . . . consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

found nothing that linked Plaintiff to the anonymous email. (Dkt. 1-1 at 12–16, 72, 78–79.) While Defendant Williamson believed the email was sent using a "TOR browser" (that would make it hard to trace), college IT records revealed Plaintiff "did not use TOR on the date the anonymous email was sent." (Dkt. 1-1 at 16, 72.)

On February 21, 2017, Defendant Williamson wrote in an internal police report that "no new evidence has been located that directly links [Plaintiff] with the e-mail that was sent to [Defendant Dewey]." (Dkt. 1-1 at 78–79.) He concluded, "[t]his case will remain pending until further evidence surfaces to move the case forward." (Dkt. 1-1 at 79.) No further evidence surfaced. (Dkt. 1-1 at 16.) But Defendant Williamson did not let the case "remain pending." Instead, on March 17, 2021, he applied for a warrant to arrest Plaintiff for aggravated stalking, ostensibly based on the theory that Plaintiff sent the email to Defendant Dewey. (Dkt. 1-1 at 16–17, 81.) A magistrate judge issued the requested warrant, and law enforcement arrested Plaintiff on March 24, 2017. (Dkt. 1-1 at 17, 81, 93.) Law enforcement obtained an indictment in June 2017, charging Plaintiff with two counts of aggravated stalking (presumably for sending the email to Defendant Dewey and for following her at a Walmart store

6

as detailed in the email) and one count of influencing a witness (presumably for making the threats in the email). (Dkt. 1-1 at 17, 81, 93.) As a result of his arrest and indictment, Plaintiff remained in jail even after he completed his 90-day sentence for the September 2016 incident. (Dkt. 1-1 at 17.)

Plaintiff later withdrew his guilty plea for the September 2016 incident and asked to be released on bond for the charges arising from the February 2017 email. (Dkt. 1-1 at 18, 86.) The court denied his requests. (Dkt. 1-1 at 18.) Defendant Dewey testified in opposition to Plaintiff's requests and "constantly pressured and influenced" the District Attorney's Office to oppose them as well. (Dkt. 1-1 at 18.) The court finally released Plaintiff on bond in January 2021 after more than three years in pretrial custody. (Dkt. 1-1 at 18, 91, 93.)

In November 2021, the District Attorney's Office moved to dismiss all charges arising from the September 2016 incident and the February 2017 email. (Dkt. 1-1 at 19.) Defendant Dewey testified in opposition to the motion. (*Id*.) The court granted the motion and dismissed all charges. (*Id*.)

Two years later, Plaintiff filed this lawsuit against Defendant Williamson, Defendant Dewey, Defendant Gwinnett County School Police (Defendant Williamson's employer), and Defendant Gwinnett County Public Schools (Defendant Dewey's employer).   (Dkt. 1-1.) Plaintiff's complaint asserts federal claims for false arrest (Count 1), malicious prosecution (Counts 2 and 7), and conspiracy (Count 11). Plaintiff also asserts state-law claims for false imprisonment (Count 3), malicious prosecution (Counts 4 and 9), intentional infliction of emotional distress (Counts 5 and 10), false arrest (Count 8), conspiracy (Count 11), and punitive damages (Counts 6 and 12).   All these claims arise from Plaintiff's arrest in September 2016 (for visiting the school) and his arrest in March 2017 (for sending the email).   Defendant Williamson and the County Defendants move to dismiss.   (Dkts. 4; 5; 6.)   Defendant Dewey also moves for judgment on the pleadings.   (Dkt. 11.)   The Court grants the County Defendants' motion in full, Defendant Dewey's motion in full, and Defendant Williamson's motion in part.

## I.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires more than a "mere possibility of misconduct." *Id.* at 679. Plaintiff's well-pled allegations must "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A motion for judgment on the pleadings is "substantially similar" to a motion to dismiss. *Scales v. Talladega Cnty. Dep't of Human Res.*, 2012 WL 3775837, at *6 (N.D. Ala. Aug. 27, 2012). It, too, challenges "whether the complaint has stated a claim for relief." *Dixon v. Ga. Dep't of Pub. Safety*, 135 F. Supp. 3d 1362, 1369 (S.D. Ga. 2015); *see Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 n.8 (11th Cir. 2002). And it, too, requires a complaint to "plausibly suggest that the defendant has a right to relief, raising that possibility above a speculative level." *Boyd v. Peet*, 249 F. App'x 155, 157 (11th Cir. 2007).[2]

---

[2] The Court recognizes that *Boyd* and other unpublished cases cited herein are not binding. The Court cites them as instructive nonetheless. *Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

"The main difference between the motions is that a motion for judgment on the pleadings is made after an answer and that answer may also be considered in deciding the motion." *United States v. Bahr*, 275 F.R.D. 339, 340 (M.D. Ala. 2011).

To keep things simple, the Court treats all Defendants' motions as motions to dismiss because that is how the parties proceed in their briefing, the motions assert overlapping and often identical arguments, the same legal standards govern each motion, and no one claims Defendant Dewey's motion should be treated differently or that her answer changes the analysis.

## II.    County Defendants

### A.    Federal Claims

Plaintiff asserts federal claims against the County Defendants under 42 U.S.C. § 1983.  (Dkt. 1-1 at 19–21, 24–26, 30–31.)  The County Defendants say these claims should be dismissed under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  (Dkt. 5 at 16–18.) The Court agrees.

Government entities like the County Defendants "cannot be held liable under § 1983 on a respondeat superior theory."  *Monell*, 436 U.S.

at 691.  Instead, they "may be held liable only [for violations] result[ing] from an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law."  *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1263 (11th Cir. 2010); *see Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Fla.*, 48 F.4th 1222, 1229 (11th Cir. 2022).  This is a "very high" bar.  *Simmons v. Bradshaw*, 879 F.3d 1157, 1169 (11th Cir. 2018).

Plaintiff does not identify any specific policy or custom that caused the conduct about which he complains.  Instead, he vaguely suggests the Individual Defendants "may fairly be said to represent official policy." (Dkt. 13 at 16.)  But "[a]n official represents government policy only if he [or she] has final policymaking authority."  *Connor v. Halifax Hosp. Med. Ctr.*, 2002 WL 32290997, at *4 (11th Cir. June 26, 2002); *see Chabad*, 48 F.4th at 1229 ("Only those municipal officials who have final policymaking authority may subject the municipality to section 1983 liability for their actions.").  And nothing in the complaint suggests Defendant Dewey (a high school teacher) or Defendant Williamson (a school resource officer) had that kind of "unreviewable authority."

*Chabad*, 48 F.4th at 1229–30 (no *Monell* liability because plaintiff did not plead a school superintendent had "unreviewable authority"); *see Doe*, 604 F.3d at 1264.  Nor does Plaintiff argue otherwise in his briefing.  So, even assuming the Individual Defendants violated Plaintiff's rights, Plaintiff has not shown the County Defendants are responsible for those violations under *Monell*.  The Court thus dismisses Plaintiff's federal claims against the County Defendants.[3]

## B.   State Claims

Plaintiff also asserts state-law claims against the County Defendants for false imprisonment, false arrest, malicious prosecution, intentional infliction of emotional distress, conspiracy, and punitive damages.  (Dkt. 1-1 at 21–24, 26–32.)  The County Defendants say sovereign immunity bars these claims.  (Dkt. at 20–21.)  The Court agrees.

---

[3] To the extent Plaintiff argues his claims should proceed because discovery could yield *Monell* evidence such as "an undocumented policy within [Gwinnett] County Public Schools," the Court rejects that argument.  (Dkt. 13 at 16.)  "[D]iscovery *follows* a well-pleaded complaint; not the other way around."  *Carter v. DeKalb Cnty., Ga.*, 521 F. App'x 725, 729 (11th Cir. 2013).  Discovery is "not a device to enable the plaintiff to make a case when his complaint has failed to state a claim."  *Id.* at 728.

In Georgia, sovereign immunity bars claims against "the state and all of its departments and agencies," including counties, county sheriff's departments, and county school districts. *Carter v. Butts Cnty., Ga.*, 821 F.3d 1310, 1323 (11th Cir. 2016); *McBrayer v. Scarbrough*, 893 S.E.2d 660, 665 (Ga. 2023) *Ratliff v. McDonald*, 756 S.E.2d 569, 573 (Ga. Ct. App. 2014); *Coffee Cnty. Sch. Dist. v. Snipes*, 454 S.E.2d 149, 150 (Ga. Ct. App. 1995). "[S]overeign immunity may only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is waived and the extent of such a waiver." *Bomia v. Ben Hill Cnty. Sch. Dist.*, 740 S.E.2d 185, 188 (Ga. Ct. App. 2013). "The burden of demonstrating a waiver of sovereign immunity falls on the party seeking to benefit from [the waiver]." *Carter*, 821 F.3d at 1323.

The County Defendants are eligible for sovereign immunity because they—or the cognizable "governmental entities" they represent—are "political subdivisions of the state." *Snipes*, 454 S.E.2d at 150; *Howard v. City of Columbus*, 521 S.E.2d 51, 66 (Ga. Ct. App. 1999) (sovereign immunity applies to "the state and its political subdivisions"); *Klingensmith v. Long Cnty.*, 833 S.E.2d 608, 613 (Ga. Ct. App. 2019) (sovereign immunity applies to "governmental entities"); (Dkts. 1-1 at 2

(County Defendants are "governmental entit[ies] within Gwinnett County, Georgia"); 5 at 9–10 (County Defendants claiming they are a single government entity called Gwinnett County School District)). Plaintiff does not dispute this conclusion.  He "points to no statute that waives Defendants' sovereign immunity."  *Smith v. Augusta-Richmond Cnty., Georgia*, 2024 WL 1257494, at *11 (S.D. Ga. Mar. 25, 2024).  He asserts no waiver theory of any kind.  *See Jones v. Fransen*, 857 F.3d 843, 855 (11th Cir. 2017) (dismissing claims because plaintiff "did not assert a waiver in response to [defendants'] invocation of sovereign immunity"); *Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013) (dismissing claims because plaintiff "failed to show [defendant] waived sovereign immunity, and, under Georgia law, it was his burden to do so").  And other courts have applied sovereign immunity to the causes of action at issue here.  *See Presnell v. Paulding Cnty., Ga.*, 454 F. App'x 763, 769 (11th Cir. 2011) (false arrest, false imprisonment, and malicious prosecution); *Smith v. Mercer*, 572 F. App'x 676, 680–81 (11th Cir. 2014) (intentional infliction of emotional distress); *Farr v. Daling*, 684 F. Supp. 3d 1358, 1375 (N.D. Ga. 2023) (conspiracy and punitive damages).  So,

absent any meaningful argument to the contrary, the Court dismisses Plaintiff's state-law claims as barred by sovereign immunity.[4]

## III.   Individual Defendants[5]

### A.   Plaintiff's Federal Claim for False Arrest (Count 1)

Count 1 asserts a federal claim for false arrest against Defendant Williamson for arresting him for stalking Defendant Dewey on September 6, 2016.  (Dkt. 1-1 at 19–20.)  As best the Court can tell, Defendant Williamson does not move to dismiss this claim (or, if he does,

---

[4] Plaintiff claims Defendant Williamson "erod[ed] the protection of Official Immunity under Georgia Law." (Dkt. 13 at 26.)  But "[s]overeign immunity and official immunity are distinct doctrines." *State v. Int'l Indem. Co.*, 823 S.E.2d 806, 810 (Ga. 2019).  "Thus, to pursue claims against the County [Defendants], [Plaintiff] must point to a waiver of . . . sovereign immunity regardless of whether any individual county official does or does not have official immunity." *Klingensmith*, 833 S.E.2d at 613.

[5] Plaintiff sues the Individual Defendants in their individual and official capacities.  This section of the Court's Order deals only with Plaintiff's individual-capacity claims.   Plaintiff's official-capacity claims are ultimately against the Individual Defendants' employers—the County Defendants—and thus fail for the reasons explained above. (Dkt. 1-1 at 2); *see Brown v. Neumann*, 188 F.3d 1289, 1290 (11th Cir. 1999) ("a [§ 1983] suit against a governmental official in his official capacity is deemed a [§ 1983] suit against the entity that he represents," which means plaintiff must make the requisite showing under *Monell*); *Bomia*, 740 S.E.2d at 188 ("[S]uits against public employees in their official capacities are in reality suits against the State, and therefore involve sovereign immunity."); *Klingensmith*, 833 S.E.2d at 613 (sovereign immunity protects "public employees sued in their official capacities").

he makes no particularized argument for doing so).  (*See* Dkt. 4.)  Count 1 may thus proceed against Defendant Williamson.

## B.   Plaintiff's Federal Claim for Malicious Prosecution Based on His September 2016 Arrest (Count 2)

Count 2 claims under federal law that Defendant Williamson maliciously prosecuted Plaintiff by obtaining a warrant to arrest him for stalking Defendant Dewey on September 6, 2016.  (Dkt. 1-1 at 20–21.) Defendant Williamson says the Court should dismiss this claim based on qualified immunity.  (Dkt. 4 at 15–18.)  The Court agrees.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known."  *Gates v. Khokhar*, 884 F.3d 1290, 1296 (11th Cir. 2018).  An official asserting this defense must show he "engaged in a discretionary function when he performed the acts of which the plaintiff complains."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004).  The burden then "shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity."  *Id.*  This requires plaintiff to show "(1) the defendant violated a constitutional right, and (2) this right was clearly

16

established at the time of the alleged violation." *Id.*  To make this showing, plaintiff must demonstrate "the preexisting law was so clear that, given the specific facts facing a particular officer, one must say that every reasonable official would have understood that what he [or she] is doing violates the Constitutional right at issue." *Gates*, 884 F.3d at 1302.

Plaintiff does not dispute Defendant Williamson (a police officer) engaged in a discretionary function when he sought and obtained a warrant to arrest Plaintiff for stalking.  (*See* Dkt. 1-1 at 2, 4 (Defendant Williamson is a "law enforcement officer[]" and an "employee" of Gwinnett County School Police).)  Nor could he.  That is so despite the alleged unconstitutionality of Defendant Williamson's conduct because the relevant inquiry is "not whether it was within [Defendant's] authority to seek [Plaintiff's] supposedly unlawful [warrant], but whether seeking a [warrant] in *general* was part of [Defendant's] job-related powers and responsibilities." *Ross v. James*, 861 F. App'x 770, 777 (11th Cir. 2021) (emphasis added); *see Mikko v. City of Atlanta, Georgia*, 857 F.3d 1136, 1144 (11th Cir. 2017) ("[W]e look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed [unconstitutionally].").  Defendant Williamson easily satisfies

17

this test because "[a]pplying for an arrest warrant clearly falls within the official responsibilities of a police officer." *Cavin v. Gwinnett Cnty.*, 2008 WL 11411825, at *9 n.24 (N.D. Ga. July 8, 2008); *see Boim v. Fulton Cnty. Sch. Dist.*, 494 F.3d 978, 981 (11th Cir. 2007) (describing a "school's resource officer" as "the school's police officer"); *State v. Scott*, 630 S.E.2d 563, 566 (Ga. Ct. App. 2006) ("[A] police officer assigned to work at a school as a school resource officer should be considered a law enforcement officer.").

The burden thus shifts to Plaintiff to show Defendant Williamson violated clearly established law.  Plaintiff has not met that burden. Indeed, he flatly ignores Defendant's argument for qualified immunity and offers no other basis for letting the claim proceed.  The Court thus dismisses Count 2 based on qualified immunity.  *See Barnes v. Dunn*, 2023 WL 4629535, at *4 (N.D. Ala. July 19, 2023) ("[A] plaintiff's failure to respond to a qualified immunity defense is fatal."); *Barr v. Silberg*, 2020 WL 5097556, at *10 (S.D. Ga. Aug. 28, 2020) ("By not responding to this argument, Plaintiff has failed to meet his burden to show that Silberg is not entitled to qualified immunity."); *Price v. City of Ormond Beach, Fla.*, 2006 WL 3755191, at *5 (M.D. Fla. Dec. 19, 2006) ("Plaintiff

has not made any attempt to refute Mathieson's claim of qualified immunity.  As the burden is on the Plaintiff to establish that qualified immunity is inappropriate, Plaintiff's failure to respond to this argument is fatal to her claims.").

Given Plaintiff's wholesale failure to defend Count 2 in his briefing, the Court also dismisses the claim as abandoned.  *See U.S. ex rel. Osheroff v. Tenet Healthcare Corp.*, 2012 WL 2871264, at *9 (S.D. Fla. July 12, 2012) ("The failure to defend a claim in responding to a motion to dismiss results in the abandonment of that claim."); *Brown v. J.P. Turner & Co.*, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) ("Plaintiffs' failure to respond is in itself grounds for the Court to rule in favor of defendant.").  The Eleventh Circuit has suggested in unpublished dicta that plaintiffs do not "abandon . . . claims by failing to address them in [their] response brief to the defendants' motion to dismiss." *Boyd*, 249 F. App'x at 157.  But several courts in this Circuit continue to take a contrary view.  *See Gailes v. Marengo Cnty. Sheriff's Dep't*, 916 F. Supp. 2d 1238, 1243 n.9 (S.D. Ala. 2013) (collecting cases).  The Court believes an abandonment finding is appropriate here because (1) Defendant's "challenge to [Count 2] has facial merit"; (2) Plaintiff never addressed

this challenge despite having both ample opportunity and the burden to do so; (3) Defendant's reply accused Plaintiff of abandoning the claim and Plaintiff never sought to dispute that assertion; and (4) "the onus is upon the parties"—not the Court—"to formulate arguments" in support of their position. *Id.* at 1244; *Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995); (*see* Dkt. 16 at 3).[6]

## C. Plaintiff's State Claim for False Imprisonment (Count 3)

Count 3 asserts a state-law false imprisonment claim against Defendant Williamson on the theory he arrested Plaintiff—without a warrant and without probable cause—for stalking Defendant Dewey on September 6, 2016. (Dkt. 1-1 at 20–21.) Defendant Williamson says this claim fails because (1) he obtained a warrant a few hours after he arrested Plaintiff, (2) the warrant "carried on to a prosecution," and (3) this means malicious prosecution is Plaintiff's only remedy. (Dkt. 4 at 25–27.) The Court disagrees.

---

[6] Even if Plaintiff properly addressed Count 2 in his briefing, the Court would still dismiss it on the merits because it does not plead a violation of clearly established law.

"Georgia law recognizes three different related torts in this area:" false imprisonment, false arrest, and malicious prosecution. *Sheffield v. Futch*, 664, 839 S.E.2d 294, 300 (Ga. Ct. App. 2020). False imprisonment requires detention without a warrant, false arrest requires detention pursuant to a warrant, and malicious prosecution requires detention pursuant to a warrant followed by a prosecution. *Id.* Where detention pursuant to a warrant (false arrest) leads to a prosecution (malicious prosecution), plaintiff may only assert a claim for malicious prosecution (not false arrest). *Id.*; *Wilder v. Fisher*, 2020 WL 5790403, at *4 (M.D. Ga. Sept. 28, 2020). But, where detention without a warrant (false imprisonment) leads to detention with a warrant (false arrest) and perhaps a prosecution (malicious prosecution), nothing suggests plaintiff may not assert a false imprisonment claim for the period in which he was detained without a warrant. That detention does not overlap with the elements of false arrest or malicious prosecution (which both require detention pursuant to a warrant). So it is not subsumed by them.

Indeed, "Georgia courts . . . allow a claim of false imprisonment for the time between [an] initial arrest and the issuance of [a] warrant," which suggests post-warrant detention does not destroy the viability of a

false imprisonment claim for pre-warrant detention. *Henley v. Payne*, 945 F.3d 1320, 1330 (11th Cir. 2019); *see Smith*, 2024 WL 1257494, at *11–13 (allowing a false imprisonment claim to proceed where a warrant was issued "hours after Plaintiff was arrested"). Another judge has also explained that, where detention occurs "before any effort [is] made to obtain a warrant," plaintiff's claim for false imprisonment does not "merge into one cause of action for malicious prosecution" even if a warrant is later obtained. *Godwin v. Gibson Prod. Co. of Albany*, 172 S.E.2d 467, 471–72 (Ga. Ct. App. 1970) (Evans, J. dissenting). Instead, "plaintiff has two separate claims:" one for "imprisonment under the warrant" and another for the "previous condition of servitude." *Id.* Count 3 may thus proceed against Defendant Williamson.

## D. Plaintiff's State Claim for Malicious Prosecution Based on His September 2016 Arrest (Count 4)

Count 4 claims under state law that Defendant Williamson maliciously prosecuted Plaintiff by obtaining a warrant to arrest him for stalking Defendant Dewey on September 6, 2016. (Dkt. 1-1 at 22–23.) Defendant Williamson says this claim fails because he had probable cause to make the arrest. (Dkt. 4 at 23–25.) The Court agrees.

"In order to state a claim for malicious prosecution, the plaintiff must show (1) prosecution for a criminal offense; (2) instigated without probable cause; (3) with malice; (4) under a valid warrant, accusation or summons; (5) which has terminated favorably to the plaintiff; and (6) has caused damage to the plaintiff." *Trident Wholesale, Inc. v. Brown*, 897 S.E.2d 610, 614 (Ga. Ct. App. 2024). "The plaintiff in these cases has a heavy burden and may prevail only if each of the foregoing elements is met." *Sherrill v. Stockel*, 557 S.E.2d 8, 11 (Ga. Ct. App. 2001).

"[T]he lack of probable cause is the most important element." *Trident*, 897 S.E.2d at 616. Probable cause exists if "the facts at the time the prosecution was initiated would lead a person of ordinary caution to entertain a belief that the accused was guilty of the charged offense." *McCall v. Frisky Whisky*, 587 F. App'x 519, 521 (11th Cir. 2014); *see Trident*, 897 S.E.2d at 615. "The essential question is whether the defendant had reasonable cause to believe that the plaintiff was guilty of the alleged offense." *McCall*, 587 F. App'x at 521. If defendant had "reasonable grounds for believing [plaintiff] to be guilty," or if "some circumstances point[ed] to the plaintiff's guilt," plaintiff cannot establish malicious prosecution. *Id.*; *Kelly v. Serna*, 87 F.3d 1235, 1241

(11th Cir. 1996) ("Where . . . there were some slight circumstances pointing to his guilt, though not enough to exclude every other reasonable hypothesis, there is no claim for malicious prosecution.").

Plaintiff has not shown Defendant Williamson lacked probable cause to arrest him for stalking Defendant Dewey at Brookwood High School on September 6, 2016. "A person commits the offense of stalking when he or she follows, places under surveillance, or contacts another person . . . without the consent of the other person for the purpose of harassing and intimidating the other person. O.C.G.A. § 16-5-90(a)(1). Defendant Williamson had "reasonable grounds" to believe Plaintiff committed this offense because at least "some circumstances point[ed] to [his] guilt." *McCall*, 587 F. App'x at 521. Specifically, Plaintiff had a history of staring at Defendant Dewey, expressing frustrations about their student-teacher relationship, allegedly threatening to kill her, allegedly taking steps to effectuate that threat, allegedly fixating on her in his therapy sessions, and being ordered to stay away from her in a TPO. This history made it suspicious when he showed up at the rear of the high school, in disguise, just feet away from Defendant Dewey's car, within 100 yards of Defendant Dewey's classroom, when he was no longer

even a student at the school.  That Defendant Dewey ran away from security and refused to answer any questions only bolstered the sense he was up to no good.  The Solicitor's Office later charged Plaintiff with stalking Defendant Dewey, which also suggests there was probable cause for his arrest.  (Dkt. 1-1 at 7, 39); *see McCall v. Whisky*, 2014 WL 12516256, at *3 (N.D. Ga. Mar. 7, 2014) ("the State Court of Troup County subsequently issued a criminal accusation against [plaintiff] for theft by taking," which was "prima facie evidence of probable cause" for plaintiff's earlier arrest).

Given the totality of this evidence, Defendant Williamson had reasonable grounds to believe Plaintiff was stalking Defendant Dewey at Brookwood High School on September 6, 2016.  At a minimum, Plaintiff has not shown otherwise in his complaint or in his briefing.  So the Court dismisses Count 4.[7]

---

[7] The Court assumes Defendant Williamson was aware of Plaintiff's history with Defendant Dewey because (1) Defendant Williamson claims he was (Dkt. 4 at 18); (2) Plaintiff does not dispute that assertion; (3) Plaintiff "bears the burden of demonstrating a lack of probable cause," including at the pleading stage, *Vandiver v. Meriwether Cnty., Georgia*, 325 F. Supp. 3d 1321, 1327 n.4 (N.D. Ga. 2018); (4) the complaint alleges "Defendant Williamson worked at Brookwood High School" at "all material times," which presumably includes the 2014–2015 period in

### E.     Plaintiff's Claim for Intentional Infliction of Emotional Distress Based on His September 2016 Arrest (Count 5)

Count 5 asserts a claim for intentional infliction of emotional distress on the ground that Defendant Williamson arrested Plaintiff for stalking Defendant Dewey on September 6, 2016.  (Dkt. 1-1 at 23.) Defendant Williamson says this claim fails because his conduct was insufficiently egregious.  (Dkt. 4 at 28–29.)  The Court agrees.

To prevail on a claim for intentional infliction of emotional distress, plaintiff must show defendant's conduct was "extreme and outrageous." *Doe v. Roe*, 864 S.E.2d 206, 214 (Ga. Ct. App. 2021).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Moore v. Lovein Funeral*

---

which Plaintiff's prior issues occurred (Dkt. 1-1 at 3); (5) the complaint says "[t]he school . . . police offer"—presumably Defendant Williamson— was at the March 2015 hearing in which Defendant obtained her first TPO against Plaintiff (Dkt. 1-1 at 102); and (6) the complaint says Defendant Williamson "immediately recognized" Plaintiff during their September 2016 encounter, "took over the arrest," and "alerted" Defendant Dewey.  (Dkt. 1-1 at 4, 103).  The Court also notes that Plaintiff does not attach or meaningfully describe the contents of Defendant Williamson's application for the September 2016 arrest warrant.  So he cannot use that application to plead a plausible claim for malicious prosecution.

*Home, Inc.*, 852 S.E.2d 876, 883 (Ga. Ct. App. 2020).  Needless to say, this is a "stringent" standard.  *Desmond v. Troncalli Mitsubishi*, 532 S.E.2d 463, 468 (Ga. Ct. App. 2000).

Plaintiff has not met that standard.  The Court has already concluded Defendant Williamson had probable cause to arrest Plaintiff on September 6, 2016.  So Defendant Williamson's role in that arrest cannot be classified as "extreme and outrageous" or "utterly intolerable in a civilized community."  *See Draper v. Reynolds*, 629 S.E.2d 476, 478–79 (Ga. Ct. App. 2006) (plaintiff's emotional distress claim failed because it was based on a "traffic stop . . . and subsequent arrest" for which defendant "had probable cause"); *Desmond*, 532 S.E.2d at 468 ("Because a magistrate found . . . probable cause to prosecute [plaintiff], the filing of charges against [plaintiff] cannot serve as the basis for his [emotional distress] claim.").  Count 5 is dismissed.

### F. Plaintiff's State Claim for Punitive Damages Based on His September 2016 Arrest (Count 6)

Count 6 seeks punitive damages from Defendant Williamson. (Dkt. 1-1 at 23–24.)  Defendant Williamson moves to dismiss this claim. (Dkt. 4 at 29–30.)  His dismissal arguments are two sentences long and lack any citations to supporting authority or the record.  That is not

enough to trigger judicial review. So, for now, the Court declines to dismiss Count 6. *See Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) ("For an issue to be adequately raised in [a] brief, it must be plainly and prominently raised and must be supported by arguments and citations to the record and to relevant authority.").

### G.  Plaintiff's Federal Claim for Malicious Prosecution Based on His March 2017 Arrest (Count 7)

Count 7 claims that, in March 2017, Defendant Williamson maliciously prosecuted Plaintiff by obtaining a warrant to arrest him for sending the anonymous email to Defendant Dewey. (Dkt. 1-1 at 24–26.) Although the body of Count 7 focuses on Defendant Williamson, Plaintiff appears to assert the claim against Defendant Dewey as well. (*See* Dkt. 1-1 at 24 (purporting to assert the claim "against All Defendants").) Both Defendants move to dismiss. (Dkts. 4 at 18–19; 11 at 15–16, 18–20.)

#### 1.    Defendant Williamson

Defendant Williamson says Count 7 should be dismissed because he is entitled to qualified immunity. Plaintiff does not—and could not—dispute that Defendant Williamson engaged in a discretionary function when he sought and obtained the warrant to arrest Plaintiff in March 2017. So the burden shifts to Plaintiff to show Defendant

Williamson violated clearly established law, specifically with respect to the federal tort of malicious prosecution.

To adequately plead that tort, plaintiff must show "(1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." *Luke v. Gulley*, 50 F.4th 90, 95 (11th Cir. 2022). Plaintiff easily meets the second prong here because the state dismissed all his charges, including those arising from his March 2017 arrest. *See Butler v. Smith*, 85 F.4th 1102, 1112 (11th Cir. 2023) ("[T]he prosecution terminated in [plaintiff's] favor when the charges against her were dismissed.").

The first prong requires plaintiff to show "the legal process justifying his seizure was constitutionally infirm" and "his seizure would not otherwise be justified without legal process." *Luke*, 50 F.4th at 95. Again, Plaintiff easily meets the latter requirement because he remained in jail for more than three years, which was "too long to be justified without legal process." *Id.* at 96 ("[Plaintiff] was imprisoned 61 days. A seizure of that length cannot be justified without a lawful warrant."). That is so even if we limit our review to the period in which Plaintiff was

detained based solely on the March 2017 warrant (the specific "legal process" about which Plaintiff complains here). Plaintiff was sentenced to 90 days in jail on February 9, 2017. (Dkt. 1-1 at 11, 53–70.) Assuming he served all 90 days—which he almost certainly didn't (Dkt. 1-1 at 16–17, 65–67)—he should've been released around May 10, 2017. But he wasn't. He remained in jail because of the March 2017 warrant. (Dkt. 1-1 at 17.) He was later indicted in June 2017, which may have contributed to his detention going forward. But, by then, he had already been detained for most of May 2017 based solely on the warrant. And that was "too long to be justified without legal process." *See Butler*, 85 F.4th at 1111–12 ("[B]ecause [plaintiff] was detained for longer than 48 hours, her seizure would have been presumptively unconstitutional—and thus not otherwise justified—if effectuated without legal process.").

We are thus left with the question of whether "the legal process justifying [Plaintiff's] seizure was constitutionally infirm." *Luke*, 50 F.4th at 95. The legal process at issue here is the March 2017 arrest warrant. *See Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020) (arrest warrant is legal process). An arrest warrant is constitutionally

infirm if defendant "intentionally or recklessly made misstatements or omissions necessary to support the warrant" or he "should have known that his warrant application failed to establish probable cause." *Sorrells v. Dodd*, 2024 WL 3981781, at *7–8 (11th Cir. Aug. 29, 2024).  Plaintiff claims the former theory applies here.  He might be right.

Defendant Williamson obtained the March 2017 warrant to arrest Plaintiff for aggravated stalking.  That offense occurs when a person "follows, places under surveillance, or contacts another person . . . without the consent of the other person for the purpose of harassing and intimidating the other person" and does so "in violation of a . . . condition of pretrial release."  O.C.G.A. § 16-5-91(a).  Defendant Williams's warrant application (an affidavit) claimed there was probable cause to believe Plaintiff committed this offense as follows:

> [B]etween 2/6/2017 07:00:00 AM and 2/07/2017 07:00:00 AM . . . . [the] accused did in violation of a condition of pretrial release . . . follow, place under surveillance, and contact the victim at [Brookwood High School] and The Wal-Mart shopping center . . . in Dekalb County.  The above location(s), which is not the residence of the Accused, without the consent of victim and for the purpose of harassing and intimidating the victim by threatening the victim's life.  Stating that the victim and the victim's family and friends would be killed if the victim did not file a motion to dismiss any pending cases the victim currently had in place.

(Dkt. 1-1 at 81.)

This statement makes three key accusations: (1) Plaintiff followed, surveilled, or contacted Defendant Dewey at Brookwood High School on or around February 6, 2017; (2) Plaintiff followed, surveilled, or contacted Defendant Dewey at Walmart on or around the same date; and (3) Plaintiff threatened to kill Defendant Dewey and her friends or family if she didn't dismiss her cases.  The affidavit is not explicit about it but, as best the Court can tell, all three accusations are based on the conclusion Plaintiff sent the anonymous email to Defendant Dewey.  (*See* Dkt. 1-1 at 17, 26, 93 ("Defendant was arrested on March 24, 2017 . . . related to the February 6th email.").)  Defendant Dewey received the email on February 6, 2017, which fits the affidavit's allegation that Plaintiff engaged in the alleged misconduct "between 2/6/2017 07:00:00 AM and 2/07/2017 07:00:00 AM."  (Dkt. 1-1 at 81.)[8]  Defendant Dewey likely received the email at school—since it was sent to her school email address during work hours on a Monday—which explains the allegation that Plaintiff stalked her there.  (Dkt. 1-1 at 8, 45); *see* O.C.G.A. § 16-5-

---

[8] Defendant Dewey may have received a second copy of the email in the early hours of February 7, 2017.  (*See* Dkt. 1-1 at 72.)

90(a)(1) ("[T]he place or places that [stalking] by [an] electronic device is deemed to occur shall be the place or places where such communication is received."). The email referenced "a photo we took of you in the Walmart parking lot," which explains the allegation that Plaintiff stalked her at Walmart. (Dkt. 1-1 at 51.) And the email said Defendant Dewey or someone she knew would die if she didn't dismiss her cases, which matches the threats alleged in the last sentence of the affidavit.

Once we are clear about all of that, the affidavit becomes problematic. It omits several significant facts, including that (1) whether Plaintiff actually stalked Defendant Dewey at Walmart/Brookwood High School—or made the alleged threatening statements—depends entirely on whether he sent an anonymous email; (2) Defendant Williamson believed the email was sent using a "TOR browser," and Plaintiff's college IT records showed he "did not use TOR on the date the anonymous email was sent"; and (3) officers executed several search warrants at Plaintiff's locations, seized more than 20 electronic devices, searched all of them, obtained information from Plaintiff's college IT Department, spoke to Plaintiff's neighbors, and found nothing that linked Plaintiff to the email.

It is plausible Defendant Williamson omitted these facts intentionally or recklessly.  He knew about the facts, they were obviously important, he had recently concluded he would have to let the case "remain pending until further evidence surface[d] to move the case forward," and, although no such evidence surfaced, he still sought a warrant about a month later.  *See Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1332 (11th Cir. 2024) ("Actual knowledge of [omitted] information would provide a sufficient basis for a jury to conclude that the omissions of those facts were intentional."); *Elmore v. Fulton Cty. Sch. Dist.*, 605 Fed. App'x 906, 910 (11th Cir. 2015) ("[A] plaintiff may raise an inference of recklessness where the facts omitted from the affidavit are clearly critical to a finding of probable cause.").

The omissions were also "necessary to support the warrant" because the affidavit would not have established arguable probable cause if the "omitted exculpatory information" were included.  *Sylvester*, 94 F.4th at 1331 ("We . . . insert any omitted exculpatory information[] and then assess whether the corrected affidavit is still able to establish at least arguable probable cause.").  This is so because the application, once corrected, presents no reason to believe—and at least some reason to

doubt—that Plaintiff engaged in the misconduct for which the warrant was sought. "[I]t was and is clearly established that intentionally or recklessly omitting material information from a warrant affidavit violates the Fourth Amendment." *Butler*, 85 F.4th at 1112. So, at least on one view of the record, Plaintiff has plausibly alleged a violation of clearly established law. *See Jackson v. City of Atlanta, Georgia*, 97 F.4th 1343, 1350 (11th Cir. 2024) ("To defeat a qualified immunity defense on a motion to dismiss, the operative complaint must plausibly plead [a violation of clearly established law].").

Defendant Williamson's briefing does not engage with any of this. He repeatedly claims he had probable cause to arrest Plaintiff based on information that he omitted from his warrant affidavit but of which he was personally aware. (*See* Dkts. 4 at 18–19; 16 at 4–8.) But, in the malicious prosecution context, courts "do not care if the defendant knew about additional inculpatory evidence that was not in the affidavit." *Sylvester*, 94 F.4th at 1330. What matters is "what the affidavit [actually] stated," not what it could have stated if the affiant included other "inculpatory evidence" in his head. *Id.*; *Luke*, 50 F.4th at 95. In other words, Defendant Williamson "cannot now rehabilitate his affidavit

by resorting to evidence that he never relayed to the state judge."
*Sylvester*, 94 F.4th at 1330.  Defendant insists this is unfair because,
although the law now focuses on "the information before the judicial
officer" rather than the affiant's subjective knowledge, it didn't do so in
2017 when Defendant Williamson applied for the warrant.  (Dkt. 16 at
9–10.)  The Eleventh Circuit has already rejected this argument.  *See*
*Sorrells*, 2024 WL 3981781, at *11 (finding courts must "look only to the
information before the judicial officer," the analysis "does not turn on the
information known to [defendant]," this was not "a new rule," and it
represented clearly established law in 2017).  So the argument is dead on
arrival.

There are, however, limits to the Court's analysis today.  It does not
reflect any serious input from the parties because their briefing talks past
each other, barely scratches the surface of the issues involved, and often
is incoherent or hard to follow.  We are also at the pleading stage,
meaning the record could sharpen or change substantially moving
forward.  Nothing in this Order binds the Court going forward or bars
Defendant Williamson from seeking qualified immunity on any ground
at summary judgment.  The Court is willing to revisit its analysis if

Defendant Williamson can show it's wrong.  But, looking only at what the parties have presented to the Court at this early stage of the litigation, the Court concludes it would be premature to dismiss Plaintiff's claim against Defendant Williamson in Count 7.  So that claim may proceed.

### 2.   Defendant Dewey

Defendant Dewey says Plaintiff's federal malicious prosecution claim against her should be dismissed because, to the extent she was involved in Plaintiff's prosecution, she did not act "under color of state law." (Dkt. 11 at 18–20.)  The Court agrees.

"In order to prevail on a civil rights action under § 1983, a plaintiff must show [he] was deprived of a federal right by a person acting under color of state law."  *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).  "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state."  *Id.* In other words, the person must act "pursuant to the power he[] possessed by state authority" or, loosely speaking, "within the scope of his employment as a[n] officer of the governmental entity by which he is employed."  *Id.*; *Jude v. Morrison*, 534 F. Supp. 2d 1365, 1371 n.7 (N.D. Ga. 2008).

Here, Defendant Dewey was a state employee because she worked for Gwinnett County Public Schools, a "governmental entity" in Georgia. (Dkt. 1-1 at 2.)  But the state employed her only as a high school teacher, meaning her involvement in Plaintiff's criminal prosecution was outside her job responsibilities and was not an exercise of "the power [she] possessed by state authority." *Griffin*, 261 F.3d at 1303.   Because Plaintiff "act[ed] only as a private individual" when she "committed the acts against plaintiff that gave rise to this action," her status as a government employee does not render her a state actor for the purposes of Count 7. *Griffin*, 261 F.3d at 1303; *Hackett v. Fulton Cnty. Sch. Dist.*, 238 F. Supp. 2d 1330, 1355 (N.D. Ga. 2002) (defendant's "status as a public school teacher does not convert every potentially tortious act he commits" into an "act[] under color of state law").

Plaintiff does not dispute this conclusion.  But he claims Defendant Dewey should nevertheless be deemed a state actor because she "conspired" with Defendant Williamson to maliciously prosecute Plaintiff for sending the February 2017 email.  (Dkt. 14 at 19–21, 28.)  This could be a viable theory—if it were well-pled—because "[p]rivate parties who corruptly conspire with state officials to maliciously prosecute an

individual also act under color of state law." *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1563 (11th Cir. 1990).  "The plaintiff attempting to prove such a conspiracy must show that the parties reached an understanding [or agreement] to deny the plaintiff his [constitutional] rights." *Id.*; *see Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016) ("The linchpin for conspiracy is agreement.").  "Though circumstantial evidence can help prove a section 1983 conspiracy, the complaint must make particularized allegations that a conspiracy existed." *Ghee v. Comcast Cable Commc'ns, LLC*, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023); *see Cox v. Mills*, 465 F. App'x 885, 887 (11th Cir. 2012) ("[P]laintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the private person and the state actor.").  "[C]onclusory, vague, and general allegations of conspiracy" are insufficient. *Mickens v. Tenth Jud. Cir.*, 181 F. App'x 865, 876 (11th Cir. 2006); *see Pittman*, 662 F. App'x at 880.

Plaintiff argues there was a conspiracy here because "Defendant Dewey took the email to Defendant Williamson instead of to her Principal," Gwinnett County School Police "had a standing policy . . . to send [threatening] email[s] to the FBI for investigation," and "neither

39

Defendant Dewey nor Defendant Williamson followed th[at] policy." (Dkt. 14 at 20.)  The Court rejects this argument.  That Defendant Dewey took the email to Defendant Williamson—instead of her school principal—is entirely unremarkable because the email made time-sensitive threats on her life and thus required the immediate assistance of law enforcement.  Defendant Williamson was a logical choice because he was a police officer, worked with Defendant Dewey, knew her history with Plaintiff, and previously arrested Plaintiff for what seemed like related issues.

The complaint does say "[Gwinnett County] School Police had a standing policy on how to handle threatening emails," "[t]he standing policy was to send the emails to the FBI for investigation," and "Defendant Williamson did not follow the policy." (Dkt. 1-1 at 10.)  But none of this implicates Defendant Dewey.  She did not work for Gwinnett County School Police (she worked for Gwinnett County Public Schools instead), so it is unclear whether she was subject to the policy.  And, even if she was, the complaint does not say *she* violated the policy or that she helped or encouraged Defendant Williamson to do so.  Absent a link of this kind, nothing about the policy-related allegations plausibly suggests

40

Defendant Dewey reached an agreement with Defendant Williamson, much less a specific agreement to violate Plaintiff's constitutional rights.

Plaintiff next argues "the two Defendants conspired to link [Plaintiff] to the email and conspired to prosecute him." (Dkt. 14 at 20.) The allegations in the complaint do not support this assertion. The complaint says "Defendant *Williamson* set out with the single purpose of proving [Plaintiff] sent the anonymous email," took several investigative steps to achieve that purpose, and ultimately "obtained an arrest warrant." (Dkt. 1-1 at 11–17 (emphasis added).) It does not say Defendant Williamson collaborated with Defendant Dewey to do these things or otherwise entered into any kind of agreement with her to ensure they happened. To be sure, it does claim repeatedly that Defendants "conspired together to keep [Plaintiff] in jail" and acted "in furtherance" of that conspiracy. (Dkt. 1-1 at 10, 17, 18–19, 30–31.) But these allegations do not move the needle because they are wholly conclusory. *See Hendrickson v. Cervone*, 661 F. App'x 961, 969 (11th Cir. 2016) (rejecting as "conclusory" plaintiff's allegation that defendant "conspired with . . . Deputy Sheriff Snodgrass to invent a crime and create a date for when the fabricated sexual abuse took place"); *Pittman*, 662 F. App'x at

881 (rejecting as "conclusory" plaintiff's allegation that "defendants understood [someone else was] involve[d] in the crime and agreed to prosecute [plaintiff] for the crime anyway").[9]

Besides, even if Defendant Dewey did conspire to link Plaintiff to the email and prosecute him, that would not constitute an agreement to "deny the plaintiff one of his constitutional rights." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1327 (11th Cir. 2015). Defendant Dewey "believed [Plaintiff] sent her the email." (Dkt. 1-1 at 9.)  And her belief was reasonable because (1) Plaintiff had "lingering feelings" about his time in special education with Defendant Dewey; (2) Plaintiff previously "loitered" outside her classroom and gave her a "death stare"; (3) Plaintiff's therapist said he was "fixated" on her, "wanted to kill [her]," and "made movement" to do so; (4) Defendant

---

[9] *See Taylor v. Pekerol*, 2016 WL 5921259, at *8 (N.D. Fla. Aug. 1, 2016) ("Plaintiff's claim that USM Miller, Mr. Valeska, and Sheriff Maddox conspired to falsely represent to Judge Peterson that Plaintiff was arrested for committing federal crimes for the purpose of depriving Plaintiff of pretrial release, is nothing more than a conclusory allegation."); *Williams v. Flagler Humane Soc'y, Inc.*, 2013 WL 12358253, at *4 (M.D. Fla. Mar. 22, 2013) (rejecting as conclusory "plaintiff's bare statement that an agreement was reached between the defendants and members of law enforcement to unlawfully arrest and imprison him"); *see also McGraw v. Banko*, 2022 WL 19333344, at *2 (N.D. Fla. Apr. 20, 2022).

Dewey obtained two TPOs against Plaintiff; (5) Plaintiff showed up outside her classroom in a bizarre disguise—in September 2016 when he was no longer a student—and then ran away from security and refused to answer questions; (6) the Gwinnett County Solicitor's Office charged Plaintiff with stalking Defendant Dewey based on the September 2016 incident; (7) the anonymous email instructed Defendant Dewey to dismiss her "civil and criminal cases," just days after she obtained a TPO against Plaintiff and less than two months after Plaintiff was charged for the September 2016 incident; and (8) Plaintiff pled guilty to the stalking charges arising from the September 2016 incident.  Because Defendant Dewey had every reason to believe Plaintiff was responsible for an email that threatened her life, her alleged commitment to link Plaintiff to the email and prosecute him for it was entirely reasonable and lawful, not a commitment to "maliciously prosecute [him] for[] a . . . crime he did not commit." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1260 (11th Cir. 2010).

Plaintiff also argues Defendant Dewey "aid[ed], support[ed] and assist[ed]" Defendant Williamson in "levying false charges" against him. (Dkt. 14 at 21.)  To the extent this merely rehashes the issues addressed

above, it fails for the same reasons.  To the extent it makes the more specific claim that Defendant Dewey helped Defendant Williamson falsify his warrant application—presumably by omitting the results of his investigation—it fails because the complaint does not support that claim.  The complaint says "Defendant *Williamson* prepared and filed a false felony arrest warrant against [Plaintiff]" based on "false statements *he* placed in the arrest warrant application."  (Dkt. 1-1 at 17 (emphasis added).)  While the complaint does say Defendant Williamson acted "in furtherance of the Dewey Williamson conspiracy" to "keep [Plaintiff] in jail," the Court has already concluded those allegations are conclusory. (Dkt. 1-1 at 17.)  The allegations also do not contend she helped him draft the affidavit, suggested he omit facts, or otherwise had any involvement in deciding what to include in the affidavit.  Plaintiff does not allege Defendant Dewey "even knew what [Defendant Williamson was] doing with the evidence in [her] case," making it hard to infer she agreed to omit that evidence from Defendant Williamson's warrant application. *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1284 (11th Cir. 2002). And, even assuming she harbored "animosity" towards Plaintiff, made "insistent complaints" about him to state authorities, "expressed [a]

desire to have [him] prosecuted," and had "motives for doing so," "none of [that] demonstrates the conspiracy necessary for a successful § 1983 claim." *Dye v. Radcliff*, 174 F. App'x 480, 483 (11th Cir. 2006).

Plaintiff has not plausibly pled Defendant Dewey acted under color of state law during her alleged involvement in Plaintiff's prosecution.  So he fails to state a claim against her for federal malicious prosecution.  Count 7 is dismissed to the extent it asserts that claim.  *See Stevens v. Plumbers & Pipefitters Loc. 219*, 812 F. App'x 815, 819 (11th Cir. 2020) ("Only in rare circumstances can a private party be viewed as a state actor for section 1983 purposes.").[10]

### H.    Plaintiff's State Claim for False Arrest (Count 8)

Count 8 asserts a state-law false arrest claim against the Individual Defendants on the theory that Defendant Williamson arrested Plaintiff

---

[10] The complaint alleges that, "on February 6, 2017, Defendants Dewey and Williamson went to the Gwinnett County Solicitor General's Office and requested that [Plaintiff's] bond be revoked."  (Dkt. 1-1 at 10.) Plaintiff doesn't really focus on this allegation.  And, even if he did, it would not move the needle.  Yes, it was joint action.  But it occurred more than a month before Defendant Williamson took the allegedly wrongful action at issue in Count 7 (obtaining the March 17, 2017 arrest warrant). It also suggests no agreement to violate Plaintiff's rights because, on February 6, 2017 (the date of the email), both Defendants had more than probable cause to believe Plaintiff sent the anonymous email and thus violated his bond conditions.

for sending Defendant Dewey the anonymous email, Defendant Williamson made the arrest pursuant to a warrant but without probable cause, Plaintiff was jailed and prosecuted pursuant to the warrant, and Plaintiff's prosecution ultimately terminated in his favor.  (Dkt. 1-1 at 26–27.)   Both Defendants say this claim fails because malicious prosecution is Plaintiff's "exclusive remedy" for the facts underlying his claim.  (Dkts. 4 at 25–27; 11 at 24–26.)  The Court agrees.

As explained in connection with Plaintiff's false imprisonment claim (Count 3), "malicious prosecution and false arrest are mutually exclusive" claims in Georgia.  *Sheffield*, 839 S.E.2d at 300. "If after the arrest the warrant is dismissed or not followed up, the remedy is for false arrest. But if the action is carried on to a prosecution, an action for malicious prosecution is the exclusive remedy, and an action for false arrest will not lie." *Id.*

Here, Plaintiff's arrest warrant "carried on to a prosecution" because the state indicted him for the charge alleged in the warrant and he appeared in bond hearings before a state judge.  (Dkt. 1-1 at 89); *see Sheffield*, 839 S.E.2d at 300 (plaintiff's arrest "proceeded to prosecution when he was brought before a judge who set his bond"); *Wilder*, 2020 WL

5790403, at *5 ("Facts that support concluding a 'prosecution has commenced' commonly include the arrestee appearing before a judge who set his or her bond."). "Thus, to the extent [Plaintiff] may seek redress, his action is one for malicious prosecution and not false arrest." *Sheffield*, 839 S.E.2d at 300.  Count 8 is dismissed.

## I.    Plaintiff's State Claim for Malicious Prosecution Based on His March 2017 Arrest (Count 9)

Count 9 asserts a state-law claim for malicious prosecution against the Individual Defendants on the theory that Defendant Williamson obtained a warrant to arrest Plaintiff for sending the anonymous email and stalking Plaintiff in the manner alleged in the email, did so without probable cause, and acted in concert with Defendant Dewey.  (Dkt. 1-1 at 27–28.)  Both Defendants move to dismiss this claim.  (Dkts. 4 at 23–25; 11 at 23–24.)

### 1.    Defendant Williamson

Defendant Williamson says Count 9 should be dismissed because (1) he acted without malice and (2) based on the totality of the information of which he was aware, he had probable cause to arrest Plaintiff for sending the anonymous email.  (Dkt. 4 at 23–25.)  The Court has already concluded—tentatively—that Defendant Williamson

intentionally or recklessly omitted material facts from his March 2017 warrant application and that this constitutes malicious prosecution under federal law even if Defendant Williamson could have established probable cause based on the total universe of facts in his head.  The Eleventh Circuit has suggested this federal analysis "applies equally" to Georgia claims for malicious prosecution, meaning the viability of Plaintiff's federal claim would necessarily establish the viability of his state claim.  *Butler*, 85 F.4th at 1119 (allowing a state malicious prosecution claim to proceed because plaintiff established a federal malicious prosecution claim by showing defendant's warrant applications omitted "material exculpatory information"); *see Brown v. DeKalb Cnty., Georgia*, 2019 WL 11508430, at *5 (N.D. Ga. Apr. 18, 2019) ("The elements of the common-law tort of malicious prosecution for § 1983 purposes are the same as those for malicious prosecution under Georgia law.").

But are malicious prosecution claims really coextensive under federal and state law (minus the "under color of state law" requirement in federal law)?  Georgia courts have repeatedly said probable cause depends on whether the "appearances *known to the defendant* [would]

lead a reasonable man to set the criminal proceeding in motion." *McKissick v. S.O.A., Inc.*, 684 S.E.2d 24, 28 (Ga. Ct. App. 2009) (emphasis added); *see Wills v. Arnett*, 702 S.E.2d at 648 ("[T]he gravamen of a complaint for malicious prosecution is the absence of probable cause *on the part of the person instituting the prosecution*." (emphasis added)). And that approach may be in tension with the federal standard, which asks not whether the *defendant* knew enough to establish probable cause but whether "the *judicial officer* who made the probable-cause determination was presented with sufficient, truthful information to establish probable cause." *Sorrells*, 2024 WL 3981781, at *12; *see Luke*, 50 F.4th at 95 ("The determination of probable cause turns on what the affidavit charging the plaintiff stated."). Moreover, the Georgia Court of Appeals recently held that, to establish the lack-of-probable-cause element for a malicious prosecution claim, "it is not enough that [defendants] *maliciously* initiated [plaintiff's] prosecution by either *lying* or *omitting material facts* when speaking to police." *Trident*, 897 S.E.2d at 616 (emphasis added). Although the case dealt with defendants being untruthful to police rather than to a judicial officer, it may raise

questions about whether "maliciously . . . omitting material facts" from a criminal accusation is enough to negate probable cause.

Defendant Williamson does not grapple with these issues.  And the Court will do not that work for him.  *See Dunmar*, 43 F.3d at 599 ("[T]he onus is upon the parties to formulate arguments.").  Given the authority supporting Plaintiff's claim, and Defendant's failure to address that authority, the Court declines to dismiss Plaintiff's state-law malicious prosecution claim against Defendant Williamson in Count 9 at this point in the case.

### 2.    Defendant Dewey

Defendant Dewey says Plaintiff's state-law malicious prosecution claim against her should be dismissed because, to the extent she was involved in Plaintiff's prosecution, she didn't act maliciously.  (Dkt. 11 at 24.)  The Court agrees.

"Under Georgia law, malice is an essential element of a malicious prosecution claim."  *Sims v. Evans*, 2015 WL 8773401, at *3 (M.D. Ga. Dec. 14, 2015).  Malice involves "personal spite" or "general disregard of the right consideration of mankind."  *Dunn v. Stewart*, 791 F. App'x 879, 882 (11th Cir. 2019).  Because "malicious prosecution suits are distrusted

by the courts," plaintiff has "an especially heavy burden" to show the requisite malice. *Kaiser v. Tara Ford, Inc.*, 546 S.E.2d 861, 867 (Ga. Ct. App. 2001).

Plaintiff has not met that burden here. The complaint says Defendant Dewey "believed [Plaintiff] sent her the [anonymous] email." (Dkt. 1-1 at 9.) This allegation "permit[s] obvious alternative explanations" for her involvement in Plaintiff's prosecution, which "suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Doe v. Samford Univ.*, 29 F.4th 675, 689 (11th Cir. 2022). Most obviously, it suggests Defendant Dewey wanted the state to prosecute Plaintiff so he couldn't follow through on his threats to kill her and so she could be free of the fear associated with those threats. Indeed, Defendant Dewey made this point explicitly at the final hearing in Plaintiff's prosecution. She said she "live[d] in constant fear" that Plaintiff would "find and kill" her, this fear disrupted or destroyed several specific parts of her life, and, if Plaintiff was not prosecuted, she would have nothing to "shield [her] from a bullet." (Dkt. 1-1 at 99–109.) Nothing in the complaint (nothing well-pled anyway) contradicts these allegations. So the Court concludes Defendant Dewey's

belief about the email—not personal spite or inconsideration—provides an obvious alternative explanation for her actions in this case. *Samford*, 29 F.4th at 689.

That conclusion is also appropriate because not only did Defendant Dewey believe Plaintiff sent her the anonymous email, but her belief was eminently reasonable based on the facts of which she was aware. The reasonableness of her belief means she had probable cause to prosecute Plaintiff for sending the email, which further suggests her efforts to do so were devoid of malice. *See Sims*, 2015 WL 8773401, at *3 ("The requisite malice may be inferred from a total lack of probable cause."). The Court dismisses Plaintiff's state-law malicious prosecution claim against Defendant Dewey.

### J.   Plaintiff's Claim for Intentional Infliction of Emotional Distress Based on His March 2017 Arrest (Count 10)

Count 10 asserts a claim for intentional infliction of emotional distress against the Individual Defendants based on their involvement in Plaintiff's email-related arrest and prosecution. (Dkt. 1-1 at 23.) Both Defendants say this claim fails because their conduct was insufficiently egregious. (Dkts. 4 at 28–29; 11 at 28–29.) The Court has already concluded Defendant Dewey's conduct was lawful and reasonable, which

means it necessarily falls short of the "extreme and outrageous" standard required to sustain a claim for intentional infliction of emotional distress. *Roe*, 864 S.E.2d at 214.   Defendant Williamson did omit significant exculpatory information from his warrant application, which may have violated state and federal law.   But the Court concludes his conduct was not "extreme and outrageous" because he still had probable cause to arrest Plaintiff based on the totality of the information of which he was aware.

Defendant Williamson had reasonable grounds to believe Plaintiff sent the anonymous email—and thus committed the aggravated-stalking offense alleged in the warrant—for reasons we have already discussed: (1) Plaintiff had "lingering feelings" about his time in special education with Defendant Dewey; (2) Plaintiff previously "loitered" outside Defendant Dewey's classroom and gave her a "death stare"; (3) Plaintiff's therapist said he was "fixated" on Defendant Dewey, "wanted to kill [her]," and "made movement" to do so; (4) Defendant Dewey obtained two TPOs against Plaintiff; (5) Plaintiff showed up outside Defendant Dewey's classroom in a bizarre disguise—in September 2016 when he was no longer a student—and then ran away from security and refused

to answer questions; (6) the Gwinnett County Solicitor's Office charged Plaintiff with stalking Defendant Dewey based on the September 2016 incident; (7) the anonymous email instructed Defendant Dewey to dismiss her "civil and criminal cases," just days after she obtained a TPO against Plaintiff and less than two months after Plaintiff was charged for the September 2016 incident; and (8) Plaintiff pled guilty to the stalking charges arising from the September 2016 incident.   Viewed in the aggregate, this evidence "point[ed] to the plaintiff's guilt" and thus established probable cause.  *McCall*, 587 F. App'x at 521.  That is so even if Defendant Williamson subjectively believed there was no evidence directly linking Plaintiff to the email or that the case should remain pending until he obtained that evidence.  *See Hughes v. State*, 770 S.E.2d 636, 640 (Ga. 2015) ("[T]he standard of probable cause is an objective one, and the subjective thinking of the actual officers in a particular case is not important.").

To be sure, Defendant Williamson conducted a robust investigation that failed to connect Plaintiff to the email.  But probable cause does not require officers to "correctly resolve conflicting evidence" or "exclude every other reasonable hypothesis."  *Kelly*, 87 F.3d at 1241; *Robinson v.*

*Metro. Atlanta Rapid Transit Auth.*, 780 S.E.2d 400, 404 (Ga. Ct. App. 2015). The circumstantial evidence pointing to Plaintiff's guilt was obvious and powerful. So, while the results of Defendant's investigation certainly made it a closer call (and may have precluded a conviction), they did not leave Defendant with "no reasonable grounds for believing" Plaintiff sent the email (and thus did not preclude probable cause). *Kelly*, 87 F.3d at 1241. After all, "[t]here is a substantial difference between the quantum of proof necessary to constitute sufficient evidence to support a conviction and that necessary to establish probable cause." *Id.*

"Whether actions rise to the level of extreme and outrageous conduct necessary to support a claim of intentional infliction of emotional distress is generally a question of law . . . . for the court to decide." *Jefferson v. Houston Hosps., Inc.*, 784 S.E.2d 837, 843 (Ga. Ct. App. 2016). And the Georgia Court of Appeals has held that, for conduct to meet the "extreme and outrageous" standard, "[i]t is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation which would entitle the plaintiff to punitive damages." *Id.* So, to the extent Defendant

Williamson knowingly or maliciously botched the warrant application here, his intent—however wrongful—is not dispositive. *See Thornton v. Jackson*, 998 F. Supp. 2d 1365, 1382 (N.D. Ga. 2014) ("[D]emonstrating extreme and outrageous conduct is no easy task."). Defendant Williamson still had probable cause to arrest Plaintiff based on the information of which he was aware, meaning the deficiencies in his warrant application were—at least in some sense—immaterial. He could have obtained the warrant without misleading anyone; he just needed to include more information in his affidavit. This makes his misconduct feel procedural or technical, even if he intended it to be more. He may have done the paperwork wrong, but it is hard to see how things would be different today had he done it right. *See Ashman v. Marshall's of MA, Inc.*, 535 S.E.2d 265, 267 (Ga. Ct. App. 2000) ("severity of the resultant harm" is relevant to outrageousness). For that reason, the Court cannot say Defendant Williamson's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Jefferson*, 784 S.E.2d at 843. The Court thus dismisses Count 10 for failure to state a claim. *See Renton v. Watson*, 739 S.E.2d

19, 26 (Ga. Ct. App. 2013) (defendant "submitted an application for an arrest warrant containing false allegations" but her conduct was insufficiently extreme/outrageous because she "dismissed the application before a warrant was issued").

### K.    Plaintiff's Conspiracy Claims (Count 11)

Count 11 asserts conspiracy claims under Section 1983 and state law on the theory that "Defendants Dewey and Williamson conspired together to unlawfully incarcerate [Plaintiff]." (Dkt. 1-1 at 30–31.)  Both Defendants say this count fails because Plaintiff has not shown they reached an understanding or agreement to violate his rights.  (Dkts. 4 at 19–20, 27–28; 11 at 17–18, 26–27).  The Court agrees for the reasons explained in connection with Plaintiff's federal malicious prosecution claim against Defendant Dewey in Count 7.  *See Williams by & through Williams v. Fulton Cnty. Sch. Dist.*, 2015 WL 13264434, at *7 (N.D. Ga. Jan. 9, 2015) (conspiracy claims under federal and state law both require "a mutual understanding to commit the alleged tort or constitutional violation").  Plaintiff's federal conspiracy claim against Defendant Dewey also fails because, as explained in the Count 7 analysis, she did not act

under color of state law.  The Court thus dismisses Count 11 for failure to state a claim.

### L.  Plaintiff's State Claim for Punitive Damages Based on His March 2017 Arrest (Count 12)

Count 12 seeks state-law punitive damages from the Individual Defendants based on their involvement in Plaintiff's email-related arrest and prosecution.  (Dkt. 1-1 at 31–32.)  The Court dismisses this claim to the extent it seeks punitive damages from Defendant Dewey because Plaintiff's substantive claims against Defendant Dewey have now been dismissed.  *See Perkins v. Thrasher*, 701 F. App'x 887, 891 (11th Cir. 2017) ("Georgia state law claims for punitive damages . . . are derivative of Georgia tort law claims and thus require an underlying claim.").  The Court declines to dismiss Count 12 to the extent it seeks damages from Defendant Williamson because some of Plaintiff's substantive claims against him remain pending.  Defendant Williamson insists the Court should nevertheless dismiss Count 12 because "none of the allegations contained in the Complaint meet the necessary legal standards to justify punitive damages."  (Dkt. 4 at 29–30.)  But this one-sentence argument—devoid of any citations to authority—is not enough to trigger judicial review.  *See Whitten*, 778 F. App'x at 793.  So, for now, the Court

declines to dismiss Plaintiff's claim for punitive damages against Defendant Williamson in Count 12.

## IV. Conclusion

The County Defendants' Motion to Dismiss (Dkt. 5) is **GRANTED** and Defendants Gwinnett County Public Schools and Gwinnett County School Police are **DISMISSED**. Defendant Dewey's Motion for Judgment on the Pleadings (Dkt. 11) is **GRANTED** and Defendant Dewey is **DISMISSED**. Defendant Williamson's Motion to Dismiss (Dkts. 4; 6) is **GRANTED IN PART** and **DENIED IN PART**. Counts 1 (federal false arrest), 3 (state false imprisonment), 6 (state punitive damages), 7 (federal malicious prosecution), 9 (state malicious prosecution), and 12 (state punitive damages) **MAY PROCEED** against Defendant Williamson in his individual capacity. Plaintiff's other claims are **DISMISSED**.

**SO ORDERED** this 26th day of September, 2024.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE