## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DAVID C. WARTH,

   Plaintiff,

v.

THOMAS WILLIAMSON,

 Defendant.

CIVIL ACTION FILE NO.
1:23-cv-05072-MLB

## <u>DEFENDANT'S INDEX OF EXHIBITS TO BREIF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT – PART I</u>

1.   Ex. A – David Warth Deposition Excerpts;

2.   Ex. B – Thomas Williamson Deposition Excerpts;

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID C. WARTH,

    Plaintiff,

v.

THOMAS WILLIAMSON,

    Defendant.

CIVIL ACTION FILE NO.
1:23-cv-05072-MLB

## DEFENDANT'S EXHIBITS TO BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

EXHIBIT A - David Warth Deposition Excerpts

Page 20

```
 1    consequences for that conduct, though, correct?
 2         A.    Correct.
 3         Q.    Did you have any conflicts or problems
 4    with other students in middle school?
 5         A.    There was occasional teasing or bullying
 6    on like a school bus, like school bus bullying.  I
 7    remember a couple incidents which involved that,
 8    involved name calling.  Occasionally I was hit a
 9    few times, but I think that got sorted out like
10    through the school administration.
11         Q.    So you reported those kids that were
12    bullying you?
13         A.    Yes.
14         Q.    Okay.  And it was addressed?
15         A.    It was addressed.  Yes.
16         Q.    How many years do you think you endured
17    that bullying when you were in middle school?
18         A.    So that really started, I think, just for
19    one year, around like eighth grade.  So like around
20    2010 to 2011.
21         Q.    And, then, you went to Brookwood High
22    School after Crews.
23               Is that correct?
24         A.    That is correct.
25         Q.    And did you receive -- at some point at
```

DAVID C. WARTH vs GWINNETT COUNTY PUBLIC SCHOOLS, ET AL.
David C. Warth on 10/09/2024

Page 48

```
1          Q.   But your parents, ultimately, between
2     your junior and senior year, did revoke ser --
3     services?
4          A.   Yes.  They sent in a formal termination
5     letter.
6          Q.   Now, your senior year you attended
7     Gwinnett Online Campus.
8               Is that true?
9          A.   I wa -- yes.  I was transferred to
10    Gwinnett Online Campus.
11         Q.   And that was between your junior year and
12    your senior year.
13              Is that right?
14         A.   That was actually in the second semester
15    of the senior year.
16         Q.   Okay.  So first semester senior year, you
17    were still at Brookwood?
18         A.   M'mm-h'mm.  Yes.
19         Q.   But not in Ms. Dewey's class anymore at
20    that point?
21         A.   Correct.
22         Q.   Okay.  Now, did you request a meeting
23    with Mr. Ford and Ms. Dewey?
24         A.   Yes.  That's the February 27, 2015
25    meeting.
```

DAVID C. WARTH vs GWINNETT COUNTY PUBLIC SCHOOLS, ET AL.
David C. Warth on 10/09/2024

Page 58

1       Q.   Okay.

2       A.   -- in that office or outside or ever.

3       Q.   Well, let's talk about this just a little

4   bit.



DAVID C. WARTH vs GWINNETT COUNTY PUBLIC SCHOOLS, ET AL.
David C. Warth on 10/09/2024

Page 63



Page 95

1      Q.    Okay.  And what route did you travel to

2   get to Brookwood High School from the CVS on

3   Dogwood Road and Five Forks Trickum?

4      A.    So I walked from the CVS down the

5   sidewalk leading to the high school.  I eventually

6   arrived at the grounds.  I started to get a little

7   bit of internal tension being at the front of the

8   school, so I -- I didn't want to go in directly.  I

9   kind of veered off to the side and actually became

10  lost while I was doing this, cause I got to a part

11  of the campus I had not previously been to, like

12  with some football fields and that place.

13          Eventually a guy in a golf cart, who

14  later -- I think he said his name was Mr. Torres,

15  he showed up to me, he started asking me why was I

16  there at the campus, I -- based on the disclosure

17  issue, I was explaining to, I did not want to tell

18  him why I was there or my identity, and, then, I

19  felt affronted enough by his questions, when he

20  started mentioning police that I said, I would like

21  to depart, so I then turned around, and I exited

22  the Brookwood campus, I moved along the sidewalk

23  leading over to Hutch Lane at the high school, and

24  that's where I was confronted by the golf cart guy

25  and Gammon and later Mr. Williamson showed up, and

Page 129

1  charges for trespassing at Brookwood High School.

2          Is that correct?

3      A.   Yes.   That's correct.

4      Q.   And Mr. Winfrey was he appointed or did

5  you hire him?

6      A.   He was private, not appointed.

7      Q.   Okay.   All right.

8          And you were eventually charged in that

9  case with stalking, trespass, and wearing a mask.

10         Is that correct?

11     A.   Those charges were later added.   I don't

12 think they were there like at the jail, but later,

13 like, I think they got added.

14     Q.   The solicitor ultimately added those

15 charges.

16         Is that your understanding?

17     A.   Yes.

18     Q.   Okay.   But Officer Williamson charged

19 you, initially, with trespassing.

20         Is that true?

21     A.   Yes.

22     Q.   Okay.   Now, do you recall that following

23 that arrest there was a second temporary

24 restraining order that was sought by Ms. Dewey?

25     A.   Yes.

Page 140

1    do that or you acknowledge that you did tell the

2    judge you intended to enter that plea?

3         A.    I think this was a response to Ms. Scaco,

4    what you're asking about here.

5         Q.    The bottom of this page, The Court:

6    Mr. Warth, you are pleading guilty --

7         A.    There it is.

8         Q.    -- to Alford versus North Carolina, the

9    stalking, criminal trespass, and wearing a mask.

10   Is that right?  Answer:  Yes.

11        A.    Okay.  That is my statement there, but

12   it's -- it wasn't -- it wasn't like an actual

13   intent to plead at that point, because we had

14   another immediate motion withdrawing it, is what we

15   had, so it's like we started in court, they then

16   had other concerns, and he said he's going to take

17   it under consideration, and, then --

18        Q.    Respectfully, this hearing was on the 9th

19   day of February, 2017.  I don't believe you filed

20   your Motion to Withdraw the Plea until June of

21   2017.

22              Isn't that true?

23        A.    Attorney Winfrey did something at that

24   point.  I'm not sure what his -- what his exact

25   process was, but we said that it wasn't really an

DAVID C. WARTH vs GWINNETT COUNTY PUBLIC SCHOOLS, ET AL.
David C. Warth on 10/09/2024

Page 148

1   subsequent arrest warrant that was taken out by

2   Officer Williamson, and you received notice of that

3   while you were incarcerated.

4           Is that right?

5       A.   Yes.   They did the rebooking on March

6   24th, 2017.

7       Q.   Okay.   And I think you testified when you

8   received that information you were in the Gwinnett

9   County Jail already.

10          Is that true?

11      A.   Yeah.   I was -- they had like a separate

12  annex that I was at, and, then, they told me there

13  was a warrant, so they brought me back to booking

14  and did the booking there.

15      Q.   Okay.   And do you remember, after that

16  booking, were you taken into a courtroom a few days

17  later for a preliminary hearing on that new

18  warrant?

19      A.   I believe so.   I think that is correct.

20      Q.   And do you remember if you had an

21  attorney named Lyle Porter that was representing

22  you at that time?

23      A.   Yes.

24      Q.   Okay.   And at that hearing do you

25  remember did Officer Williamson testify?

DAVID C. WARTH vs GWINNETT COUNTY PUBLIC SCHOOLS, ET AL.
David C. Warth on 10/09/2024

Page 149

1      A.    Yeah.   He showed up at that hearing.

2      Q.    Okay.   And do you remember did your

3    attorney, Lyle Porter, cross-examine Officer

4    Williamson?

5      A.    He started asking Williamson a lot of

6    questions, so I think that was cross-examination.

7      Q.    Do you remember what Officer Williamson

8    said to support the probable cause finding for that

9    arrest warrant?

10     A.    General --

11     Q.    If you don't remember, that's fine, but

12   do you remember did he tell the judge that there

13   was an E-mail that was sent?

14     A.    I remember he spoke for a really long

15   time, but the exact contents of his statements,

16   I -- it's kind of like blurry for me, cause it's --

17   like it was a lot.

18     Q.    Okay.   And at that time was that hearing

19   held over at the courthouses at the jail?

20     A.    Yeah.   I think it was in the -- in a

21   court building.

22     Q.    Okay.   And that's because you were still

23   incarcerated at that time, correct?

24     A.    Correct.

25     Q.    Okay.   And do you remember did the

Page 166

1      Q.   All right.  And if you look down to No.

2    6, it says, the IP address 91103.4.74 was not

3    associated with the TOR network within 24 hours of

4    February 6th, 2017.

5          Is that right?

6      A.   That is what that says.   Correct.

7      Q.   So it doesn't say that the E-mail did not

8    come through the TOR network.  It says that your IP

9    address was not used within the 24 hours of when

10   that was sent, correct?

11     A.   That -- that -- that is not my IP address

12   on there.  That is an Ireland IP address.  I have

13   no affiliation with this.  I've not ever contacted

14   anybody, to my knowledge, from Ireland.  I've not

15   ever been to Ireland.

16     Q.   Okay.  So you think this IP address has

17   nothing to do with you at all?  This is another IP

18   address that we just used on that E-mail?

19     A.   Or -- well, I think that's an Ireland IP

20   address.  It has not pertinence to me at all.

21   Correct.

22     Q.   All right.  Well, thank you for helping

23   me understand that.

24          All right.  Now, you testified that you

25   subsequently withdrew your guilty plea that had

DAVID C. WARTH vs GWINNETT COUNTY PUBLIC SCHOOLS, ET AL.
David C. Warth on 10/09/2024

Page 167

1    previously been entered.  I think the judge's order

2    on that was around August 2017.

3            Does that sound correct?

4        A.    It was sometime after I was at the GCSO.

5    Like it's kind of hard for me to tell time in such

6    an unstructured environment --

7        Q.    Okay.

8        A.    -- but that sounds, more or less, like

9    when that occurred.

10       Q.    And, then, from that point, on, you were

11   pending trial for allegations related to the

12   threats made to Ms. Dewey.

13           Is that right?

14       A.    It was within March 24th -- yeah, March

15   24th, 2017.  I think that was the warrant.  Either

16   March 14th or March 24th, 2017 of that warrant.

17       Q.    Those charges, right?  That were part of

18   that warrant, and, then, were subsequently brought

19   before a judge for the probable cause hearing?

20   That same -- those new charges?

21       A.    It -- it was that warrant.

22       Q.    Okay.  And were you indicted?  Did you

23   receive an indictment?

24       A.    I think so.  And when I -- when I asked

25   the sheriff's deputies at the GCSO why am I here?

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DAVID C. WARTH,

    Plaintiff,

v.

THOMAS WILLIAMSON,

    Defendant.

CIVIL ACTION FILE NO.
1:23-cv-05072-MLB

## DEFENDANT'S EXHIBITS TO BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

EXHIBIT B – Thomas Williamson Deposition Excerpts

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

1   siblings.  And I told her as long as Ms. Dewey wasn't

2   there and I confirmed that she wouldn't be there, that

3   I had no issue with it, because, again, I have no

4   personal animosity toward David.  And as long as she

5   wasn't going to be there, I told her I didn't think it

6   would be a problem because he was already attending,

7   you know, school with the TPO in effect.  So I had

8   that conversation with the mom about that then and

9   that was it.

10      Q   Okay.  But you didn't receive no calls or

11   anything saying that David had any contact with

12   Ms. Dewey in 2015 besides -- I mean, after the TPO was

13   went in place, there was nothing saying that David got

14   in contact with Ms. Dewey at all?

15      A   Not that I recall, no.

16      Q   Okay.  In March of 2016, the TPO expires,

17   correct?

18      A   I believe it did.

19      Q   Okay.  Once it expired, are you aware that

20   David started contacting the administrators at the

21   school?

22      A   I don't know.  If he did, I wasn't privy to

23   it.  I don't know.  He could have.  I just don't know.

24      Q   That's fair.  And so you are unaware at all

25   of him contacting them trying to get his school

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 33

1      Q      From your perspective, what happened that

2   day?

3      A      Well, I was off campus.  I don't recall the

4   reason why.  So I wasn't on campus, and I believe I

5   received a phone call from either Officer Gammon, who

6   was the officer on campus at that time, or someone at

7   the school, maybe the school security officer.  I

8   don't recall which, but I was notified that there was

9   an issue with a trespasser on campus.  So I was headed

10  back to the school and was in communication, I

11  believe, on the school's radio with Officer Gammon

12  because he was there on scene.  Again, just notified

13  that there had been a trespasser on campus who ran

14  from the school security officer.

15         He was caught in the teacher's parking lot

16  in the rear of the school near the trailers.  And so

17  there was a search on for him.  And he was located at

18  a subdivision street off of Dogwood Road just down the

19  road from Brookwood High School.

20     Q      Okay.  And what -- when you arrived on

21  scene, was it at the school or was it when they were

22  in the neighborhood?

23     A      When they were in the neighborhood.  I met

24  Officer Gammon where he was with David.

25     Q      Okay.  So at the time when you arrived on



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 34

1    scene, you didn't know where David had been on the

2    campus at that time.  You just knew that he had been

3    on campus, but not necessarily where?

4         A    Correct.

5         Q    All right.  Subsequently, you learn that

6    information after David had already been arrested,

7    correct?

8         A    No.  I believe I -- well, honestly, I don't

9    know when I learned exactly where it was or where he

10   was originally located.  If it was where officer -- if

11   Officer Gammon told me once I arrived or I got the

12   full story after he was placed under arrest.  I don't

13   recall that part of it.

14        Q    Okay.  So once you arrived on scene, tell me

15   what happens when you arrive on scene in the

16   neighborhood.

17        A    Officer Gammon was interviewing David and I

18   just stood back and because he was handling the

19   situation at that time.  And he was just speaking with

20   David and actually allowed David to use Officer

21   Gammon's personal cell phone to call his attorneys.

22   And the reason he was doing that because Officer

23   Gammon asked him numerous times to identify himself,

24   explain what he was doing on campus, and it was also

25   obvious to any reasonable person that David was



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 35

```
 1   wearing a disguise.
 2          So he created such alarm that, you know,
 3   when he went to the local CVS to purchase everything
 4   that he needed for his disguise, he alarmed a clerk
 5   there and she called 911 and just to report, you know,
 6   how alarming his behavior was and wanted officers in
 7   the area to be aware.  And also his behavior in his
 8   disguise was so alarming to a parent who just happened
 9   to be walking down the sidewalk, that she also called
10   911.
11          So we had two separate 911 calls from two
12   separate citizens calling the Gwinnett County police
13   that we didn't know about because the Gwinnett County
14   police and our department operate on two different
15   channels.  So they were looking for David at the same
16   time we were looking for David.  And so I arrived and
17   was just assisting Officer Gammon and listening to the
18   conversation.
19          And Officer Gammon was giving David every
20   opportunity to identify himself and explain why he was
21   on campus, why he ran, why he was found where he was.
22   And even, again, to the point of letting David use his
23   personal cell phone to call his attorney so that David
24   could get legal advice before even speaking to us.  So
25   Officer Gammon went above and beyond at that point.
```



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 36

```
 1              And so, again, I just stood back and was
 2   just listening to the conversation.  And at some
 3   point, several Gwinnett County police officers arrived
 4   at that's when we realized that other people had
 5   called 911 due to David's behavior.
 6        Q    And so the thing that he had on, was it like
 7   a costume beard?
 8        A    Yes.  It was a beard.  He had a ball cap on.
 9   I believe sunglasses, I'm not, maybe, maybe not
10   sunglasses.  He had a Brookwood shirt on.  He was
11   wearing latex gloves, so it -- but if you just saw him
12   or the pictures that were taken of him that day, I
13   think, you know, people would agree it was pretty
14   alarming.
15        Q    So baseball cap, sunglasses, a costume
16   beard, and latex gloves.
17        A    Don't quote me on the sunglasses.  I'm
18   trying to remember if he had that, but the rest, yes.
19        Q    All right.  And the costume beard was like
20   an orange beard that you wear, like, Halloween?
21        A    It was more of, like, I think a brownish
22   type beard.  And yes, it was -- it was one that you
23   would wear for Halloween and one that when you saw it,
24   you knew it was obviously fake.
25        Q    Okay.  At any event, there was a decision
```

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 37

1   that was made out there to arrest David; is that

2   correct?

3       A    Correct.  Yes, sir.

4       Q    **Were you the person that made that decision?**

5       A    Yes, sir, I was.

6       Q    **And what was your basis for making that**

7   **decision at that time?**

8       A    Well, I knew that Officer Gammon had been

9   talking to David for some time and, again, I stood

10  back and let that conversation happen.  And, you know,

11  just based on my years of experience, at that time

12  which were close to 30 years in law enforcement which

13  were, you know, a lot more than Officer Gammon's.

14  Again, I just stood back and listened to the

15  conversation, but it was very apparent that he was not

16  going to identify himself.  He was not going to tell

17  us his name.  It was not going to tell us his reason

18  for being on campus.  He was not going to remove the

19  disguise.

20          And so I let the conversation between David

21  and Officer Gammon go on for a while.  And again,

22  David is on Officer Gammon's phone speaking with his

23  legal counsel.  And then the Gwinnett County police

24  arrived.  They begin questioning, you know, what's

25  your name, you know, and he refused to answer any



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 38

1   questions.  You know, that those officers were asking.

2   So we just really reached an impasse and a decision

3   had to be made which way we were going to go with this

4   because, obviously, in that type of situation where

5   he's trespassing on campus, we can't just allow him to

6   okay, you can go now because you're not going to tell

7   us your name, you're free to go.

8        So at that point we had enough probable

9   cause to go ahead and affect an arrest for criminal

10  trespass.  So I told Officer Gammon that I was going

11  to basically step in and I said I'm going to go ahead

12  and arrest him for criminal trespass because it was

13  obvious he was not going to answer any of our

14  questions or identify himself.

15     Q    Okay.  And at the time you made that

16  assessment, that was before you even knew who the

17  person was at that time?

18     A    That is correct.

19     Q    All right.  And so after you make the

20  decision to arrest him, you arrest him, what happens

21  next?

22     A    Once we arrest him, obviously, we're trying

23  to find out who he is.  So once he's placed under

24  arrest and told that he's under arrest for criminal

25  trespass, we remove the disguise.  And even after the

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 39

```
 1   disguise was off, I didn't -- it still didn't register
 2   with me who he was because, again, I didn't have any
 3   personal animosity towards David.  I didn't know who
 4   he was.  It's not like I was following him all the
 5   time or keeping up with him in school even after the
 6   incident with Ms. Dewey.
 7           So even once a disguise was removed, I had
 8   no idea who he was until we got his wallet out and got
 9   his ID and I saw his name and I said, Oh, then it
10   jogged my memory and I said I know who he is.  There
11   was an issue between him and a teacher at the school.
12   And so that's when things just started to fall into
13   place.
14       Q    And once you saw the ID and saw his name,
15   then you draw the conclusion at that moment that he
16   was there stalking Ms. Dewey?
17       A    Not at that moment, but things started,
18   certainly started to make more sense about the
19   disguise, where he was located, which was in close
20   proximity to her car, and where her trailer was.  So
21   all of that started to fall into place and make more
22   sense as we began to talk about what had occurred,
23   what had happened, where he was found, where he was
24   running from.  So the stalking part of it again just
25   came as we began to talk about the situation and what
```


Elizabeth Gallo

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 65

1    well, correct?

2        A    I'm sorry, what?

3        Q    It talks about small claim cases as well?

4        A    Yes.

5        Q    To the term "defendants, respondents" is not

6    limited to someone that was in a criminal setting in

7    that e-mail, correct?

8        A    Well, if you're a defendant, I mean, that

9    could go either way, really.  But a defendant

10   typically in my mind would be more geared towards a

11   criminal case.

12       Q    Are you aware that there are people that

13   refer to defendant in civil cases as well?

14       A    Sure, absolutely.

15       Q    Okay.  And my only point in saying that, the

16   word "defendant or respondent" in this particular

17   e-mail is broad and covers both criminal and civil

18   people as it relates to --

19       A    Yeah, that's correct.  I understand.  And,

20   you know, just to shed some light on that, too, Ms.

21   Dewey said immediately she had no pending court

22   actions.  The only court action that she had was the

23   ongoing legal action she had with David Warth.  There

24   was no civil, no other criminal.  There was nothing

25   going on according to her.

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 76

1       Q    All right.  The e-mail also says to dismiss

2    all small claim suits; isn't that correct?

3       A    I believe it did.

4       Q    But there were no small claim suits that

5    Ms. Dewey had pending?

6       A    According to Ms. Dewey, no.

7       Q    It also says, dismiss any divorce

8    proceedings also, doesn't it?

9       A    Correct.

10       Q    And Ms. Dewey didn't have any divorce

11    proceedings either?

12       A    No.  The only legal action that she had at

13    that time that was of any consequence was the legal

14    action regarding David Warth.

15       Q    The e-mail goes further and says, for any

16    divorce case, in parentheses, the respondent no longer

17    lives near you.  That's on page 5; isn't that correct?

18       A    I'd have to go back and look.

19       Q    Okay.

20       A    Okay.  I'm sorry, where on page 5?

21       Q    Let me see if I can find the exact spot.  So

22    page 5 about midway down the page.

23       A    Okay.

24       Q    There's a paragraph that has a hyphen in

25    front of it.  It says, your lawyer.  And a few lines

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 103

1   or not.  I know it's a search engine, but I don't know

2   if they, you know, offer e-mails, too.

3       Q    DuckDuckGo is a search engine, correct, as

4   far as you know?

5       A    Yeah, uh-huh.

6       Q    Now, when you searched or when the other

7   officers searched the Warth's home, they didn't find

8   anything there to connect David to this e-mail; isn't

9   that correct?

10      A    They -- they seized quite a few electronics,

11  that -- items that, you know, were listed and that

12  were reviewed by the forensics investigators.  They

13  did not find anything on those electronic items, but

14  we never found the TracFone, David's cell phone, or

15  his laptop.  Those still remain missing to my

16  knowledge.

17      Q    So the answer is yes, they didn't find

18  anything at the house to connect the e-mail to David;

19  is that correct?

20          MR. PEREIRA:  Object to form.  You can

21      answer the question.

22      A    They did not find anything on the items that

23  were seized, but we never found items we -- other

24  items we were looking for.

25  BY MR. WINFREY:

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 105

1  because the arrest warrant for David wasn't obtained
2  until, I believe, March 17th.  So the investigation
3  continued.  There were also two meetings during that
4  time, you know, that we had served the search
5  warrants, we had gone over all the evidence, possibly
6  returned all the electronics to the Warth family, and
7  again, during the second search warrant of the Warth's
8  home, we were specifically looking for his laptop and
9  his cell phone that were never recovered.

10        So we continued the investigation.  And
11  again, there were two specific meetings involving my
12  supervision, Lieutenant Randy Holloway, the Assistant
13  Chief Bill Wellmaker, the prosecutor in the case,
14  Investigator Flynn with the DA's office also, the
15  computer forensics people, to basically say where are
16  we with the case.  What do we have.  What evidence
17  have we recovered.  What are we still looking for.
18  And what we came up with, you now, after a long period
19  of time and plus there was a -- excuse me, actually,
20  there were five search warrants because one that I
21  served at the psychotherapy office where David went.

22        So all of that evidence was reviewed by
23  multiple people.  And so the decision was made at some
24  point it March, you know, okay, we have enough
25  evidence.  The prosecution said this is a strong case



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 123

1    further questions.

2              MR. PEREIRA:  I have a few questions.

3                   DIRECT EXAMINATION

4    BY MR. PEREIRA:

5         Q    Officer Williamson, you testified that you

6    provided testimony to the magistrate court judge with

7    regard to the March 2017 arrest warrant; is that

8    correct?

9         A    Yes, that correct.

10        Q    And do you recall the testimony that you

11   provided to the judge on that day?

12        A    Yes, I do.

13        Q    Okay.  And did you explain to the judge that

14   the basis of the arrest warrant dealt with a

15   threatening e-mail?

16        A    Yes, I did.

17        Q    Okay.  Did you describe to the judge the

18   history with regard to David Warth and Brittney Dewey

19   who received that e-mail?

20        A    Yes, I did.

21        Q    And did that testimony include the

22   information about the threats made that were

23   transmitted from his therapist to the school?

24        A    Yes, it did.

25        Q    And did that information also include the

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 124

1    information that you had regarding David Warth's

2    trespassing at Brookwood High School wearing costume?

3         A    Yes, it did.

4         Q    Did you also include in your testimony to

5    the magistrate court information about the TOR

6    browser?

7         A    Yes, I did.

8         Q    Okay.  Can you tell us what did you tell the

9    judge you remember about how the TOR browser could

10   have been involved in this case.

11        A    Just basically what we talked about here

12   today is that a TOR browser is something that people

13   use with the dark web if they're trying to remain

14   anonymous and so they can do things or send things

15   such as e-mails and they can remain anonymous.  So

16   just explaining to the judge, you know, that the

17   sender of this e-mail used a TOR browser through the

18   TOR service as it is to send this e-mail so they can

19   remain anonymous and the e-mail couldn't be tracked.

20   And if you try to track it it would show that it just

21   kind of came from different parts of the world.

22        Q    Now, did the search warrant also get served

23   on the IT Department at Emory University?

24        A    Yes, sir, it did.

25        Q    And is it the case that they were not able

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 125

1    to show that David Warth used the TOR on the date

2    alleged?

3        A    They were -- they showed that David was not

4    using the TOR on the date that the e-mail was sent,

5    but they did show leading up to that, David was using

6    a TOR browser in his dorm room prior to the date that

7    the e-mail was sent.  So it was confirmed that he was

8    using a TOR browser in his dorm room.

9        Q    But if he wasn't using a TOR the date that

10   the e-mail was sent, isn't that dispositive of the

11   fact that he didn't send the e-mail?

12       A    No, because the working theory and what the

13   prosecutors with the District Attorney's office even

14   told his attorneys at that time when they brought up

15   the same argument was that they believe David and

16   David has been, so many people will tell you that

17   David is brilliant, David is very smart.  And so they

18   also, you know, told his attorneys at that time that

19   their theory is that David was smart enough not to

20   send that e-mail on the day that Ms. Dewey received or

21   the next day.  That he typed up the e-mail and then

22   set it to be sent on those days when he would not be

23   present or using the Internet in his dorm room.  So

24   that's what the prosecutors believe that he did.

25       Q    Did you explain that to the magistrate judge



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 129

1      A      Well, I think just to my knowledge of the

2   relationship between David and Ms. Dewey and the

3   ongoing issues, you know, between David and Ms. Dewey

4   the temporary protective orders, the arrest of David

5   from, you know, back in September of 2016, I believe

6   it was, where he came on campus, you know, in the

7   disguise in which, you know, he was charged with

8   stalking.  And we believed at that point that he was,

9   you know, coming to do harm to Ms. Dewey.

10          So I think with all of that evidence and the

11  history and the history with David and Ms. Dewey and

12  the principal even before I even got involved, there

13  was a long trail there of a lot of evidence or a lot

14  of history.  So I think any reasonable person, you

15  know, the first thought that would come to their mind,

16  you know, when that e-mail is received, is that where

17  there's probably only one person or is one person that

18  is responsible for that e-mail being sent.

19      Q      Going back to the September 2016 arrest.

20      A      Yes, sir.

21      Q      The areas that you -- when you reviewed the

22  video, the areas David Warth was seen in, are those

23  near the front of the school?

24      A      No, quite the opposite.

25      Q      If you were going to be going to the office



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

Page 140

1    that he found it and asked Missus Warth or somebody
2    about it.
3         Q    So Missus Warth was being cooperative during
4    the second search?
5         A    No, not in my view, no.
6         Q    Did you tell the judge that after March
7    of 2015, other than in court, Ms. Dewey has never seen
8    David?
9         A    I told the judge everything relevant to the
10   case and the investigation.  It was centered on the
11   evidence that was recovered and the evidence that
12   wasn't recovered, the e-mail, and everything that had
13   transpired during that investigation.
14        Q    All these things that you're saying that you
15   told the judge, why didn't you put that stuff in your
16   arrest warrant?
17        A    I'm sorry, in my arrest warrant?
18        Q    Yeah.  All this stuff you're saying that you
19   told the judge, why didn't you put that in writing in
20   the arrest warrant?
21        A    Again, it's an electronic warrant and it's
22   just a standard boilerplate format.  And, I mean, I
23   could take up pages and pages and pages, you know,
24   putting in all that stuff in a warrant when, you know,
25   it's just -- it's just too much to put it there in a

