**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DAVID C. WARTH,

   Plaintiff,

v.

THOMAS WILLIAMSON,

 Defendant.

CIVIL ACTION FILE NO.
1:23-cv-05072-MLB

---

**DEFENDANT'S EXHIBITS TO STATEMENT OF UNDISPUTED
MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY
JUDGMENT**

EXHIBIT B- Thomas Williamson Deposition Excerpts

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson
October 04, 2024

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID WARTH,
            Plaintiff,

      vs.                          CIVIL ACTION FILE
                                   NO.: 1:23-CV-05072-MLB
GWINNETT COUNTY PUBLIC
SCHOOLS, GWINNETT COUNTY
SCHOOL POLICE, THOMAS
WILLIAMSON, Individually
and in his official capacity
as an employee of Gwinnett
County School Police, and
BRITTANY DEWEY, Individually
and in her official capacity
as an employee of Gwinnett
County Public Schools,
            Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
            REMOTE DEPOSITION OF
          OFFICER THOMAS WILLIAMSON

                October 4, 2024
                  1:59 p.m.

      (All attendees appeared remotely via
    videoconferencing and/or teleconferencing.)

          Vivian C. Whitlow, CCR, CVR
            #6542-7835-9986-9952



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                    October 04, 2024

Page 24

1    you?

2        A    Not at the moment, sir, I don't.

3        Q    Okay.  If you need to get a copy of it, is

4    it accessible to you?

5            MR. PEREIRA:  I may have copies of his

6        report.  You're talking about his actual reports?

7            MR. WINFREY:  Yes.  He doesn't need them

8        right now.  You don't need it right now.  I'm

9        just saying as we go forward, if you need it, I

10        just want to make sure it's handy that you can

11        get to it.

12    BY MR. WINFREY:

13        Q    So tell me about your relationship with

14    David Warth?

15        A    The only relationship I had with David was,

16    again, same thing, you know, in a professional manner.

17    The first time David ever even came on my radar was, I

18    believe, March -- I believe it was 2015 when the --

19    his therapist, Melissa Coates, called the school and

20    notified them of, you know, a threat to harm Ms.

21    Dewey, and, of course, the school notified me.  And so

22    that was the first time I've really only heard of

23    David Warth.

24        Q    Okay.  Do you ever recall your first

25    interaction with Ms. Brittney Dewey?

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                      October 04, 2024

Page 29

1    siblings.  And I told her as long as Ms. Dewey wasn't

2    there and I confirmed that she wouldn't be there, that

3    I had no issue with it, because, again, I have no

4    personal animosity toward David.  And as long as she

5    wasn't going to be there, I told her I didn't think it

6    would be a problem because he was already attending,

7    you know, school with the TPO in effect.  So I had

8    that conversation with the mom about that then and

9    that was it.

10        Q    Okay.  But you didn't receive no calls or

11   anything saying that David had any contact with

12   Ms. Dewey in 2015 besides -- I mean, after the TPO was

13   went in place, there was nothing saying that David got

14   in contact with Ms. Dewey at all?

15        A    Not that I recall, no.

16        Q    Okay.  In March of 2016, the TPO expires,

17   correct?

18        A    I believe it did.

19        Q    Okay.  Once it expired, are you aware that

20   David started contacting the administrators at the

21   school?

22        A    I don't know.  If he did, I wasn't privy to

23   it.  I don't know.  He could have.  I just don't know.

24        Q    That's fair.  And so you are unware at all

25   of him contacting them trying to get his school

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                    October 04, 2024

Page 33

1        Q     From your perspective, what happened that
2    day?
3        A     Well, I was off campus.  I don't recall the
4    reason why.  So I wasn't on campus, and I believe I
5    received a phone call from either Officer Gammon, who
6    was the officer on campus at that time, or someone at
7    the school, maybe the school security officer.  I
8    don't recall which, but I was notified that there was
9    an issue with a trespasser on campus.  So I was headed
10   back to the school and was in communication, I
11   believe, on the school's radio with Officer Gammon
12   because he was there on scene.  Again, just notified
13   that there had been a trespasser on campus who ran
14   from the school security officer.
15            He was caught in the teacher's parking lot
16   in the rear of the school near the trailers.  And so
17   there was a search on for him.  And he was located at
18   a subdivision street off of Dogwood Road just down the
19   road from Brookwood High School.
20       Q     Okay.  And what -- when you arrived on
21   scene, was it at the school or was it when they were
22   in the neighborhood?
23       A     When they were in the neighborhood.  I met
24   Officer Gammon where he was with David.
25       Q     Okay.  So at the time when you arrived on

Case 1:23-cv-05072-MLB    Document 46-6    Filed 01/09/25    Page 6 of 27


David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                    October 04, 2024

Page 34

1    scene, you didn't know where David had been on the

2    campus at that time.  You just knew that he had been

3    on campus, but not necessarily where?

4        A    Correct.

5        Q    All right.  Subsequently, you learn that

6    information after David had already been arrested,

7    correct?

8        A    No.  I believe I -- well, honestly, I don't

9    know when I learned exactly where it was or where he

10   was originally located.  If it was where officer -- if

11   Officer Gammon told me once I arrived or I got the

12   full story after he was placed under arrest.  I don't

13   recall that part of it.

14       Q    Okay.  So once you arrived on scene, tell me

15   what happens when you arrive on scene in the

16   neighborhood.

17       A    Officer Gammon was interviewing David and I

18   just stood back and because he was handling the

19   situation at that time.  And he was just speaking with

20   David and actually allowed David to use Officer

21   Gammon's personal cell phone to call his attorneys.

22   And the reason he was doing that because Officer

23   Gammon asked him numerous times to identify himself,

24   explain what he was doing on campus, and it was also

25   obvious to any reasonable person that David was

COURT REPORTING, LLC

www.GeorgiaReporting.com/Schedule
404.389.1155

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                    October 04, 2024

Page 35

1    wearing a disguise.

2         So he created such alarm that, you know,

3    when he went to the local CVS to purchase everything

4    that he needed for his disguise, he alarmed a clerk

5    there and she called 911 and just to report, you know,

6    how alarming his behavior was and wanted officers in

7    the area to be aware.  And also his behavior in his

8    disguise was so alarming to a parent who just happened

9    to be walking down the sidewalk, that she also called

10   911.

11        So we had two separate 911 calls from two

12   separate citizens calling the Gwinnett County police

13   that we didn't know about because the Gwinnett County

14   police and our department operate on two different

15   channels.  So they were looking for David at the same

16   time we were looking for David.  And so I arrived and

17   was just assisting Officer Gammon and listening to the

18   conversation.

19        And Officer Gammon was giving David every

20   opportunity to identify himself and explain why he was

21   on campus, why he ran, why he was found where he was.

22   And even, again, to the point of letting David use his

23   personal cell phone to call his attorney so that David

24   could get legal advice before even speaking to us.  So

25   Officer Gammon went above and beyond at that point.

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                    October 04, 2024

Page 36

1          And so, again, I just stood back and was

2    just listening to the conversation.  And at some

3    point, several Gwinnett County police officers arrived

4    at that's when we realized that other people had

5    called 911 due to David's behavior.

6          Q    And so the thing that he had on, was it like

7    a costume beard?

8          A    Yes.  It was a beard.  He had a ball cap on.

9    I believe sunglasses, I'm not, maybe, maybe not

10   sunglasses.  He had a Brookwood shirt on.  He was

11   wearing latex gloves, so it -- but if you just saw him

12   or the pictures that were taken of him that day, I

13   think, you know, people would agree it was pretty

14   alarming.

15         Q    So baseball cap, sunglasses, a costume

16   beard, and latex gloves.

17         A    Don't quote me on the sunglasses.  I'm

18   trying to remember if he had that, but the rest, yes.

19         Q    All right.  And the costume beard was like

20   an orange beard that you wear, like, Halloween?

21         A    It was more of, like, I think a brownish

22   type beard.  And yes, it was -- it was one that you

23   would wear for Halloween and one that when you saw it,

24   you knew it was obviously fake.

25         Q    Okay.  At any event, there was a decision

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                   October 04, 2024

Page 37

1   that was made out there to arrest David; is that

2   correct?

3        A    Correct.  Yes, sir.

4        Q    Were you the person that made that decision?

5        A    Yes, sir, I was.

6        Q    And what was your basis for making that

7   decision at that time?

8        A    Well, I knew that Officer Gammon had been

9   talking to David for some time and, again, I stood

10  back and let that conversation happen.  And, you know,

11  just based on my years of experience, at that time

12  which were close to 30 years in law enforcement which

13  were, you know, a lot more than Officer Gammon's.

14  Again, I just stood back and listened to the

15  conversation, but it was very apparent that he was not

16  going to identify himself.  He was not going to tell

17  us his name.  It was not going to tell us his reason

18  for being on campus.  He was not going to remove the

19  disguise.

20           And so I let the conversation between David

21  and Officer Gammon go on for a while.  And again,

22  David is on Officer Gammon's phone speaking with his

23  legal counsel.  And then the Gwinnett County police

24  arrived.  They begin questioning, you know, what's

25  your name, you know, and he refused to answer any

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                          October 04, 2024

1    questions.  You know, that those officers were asking.

2    So we just really reached an impasse and a decision

3    had to be made which way we were going to go with this

4    because, obviously, in that type of situation where

5    he's trespassing on campus, we can't just allow him to

6    okay, you can go now because you're not going to tell

7    us your name, you're free to go.

8            So at that point we had enough probable

9    cause to go ahead and affect an arrest for criminal

10   trespass.  So I told Officer Gammon that I was going

11   to basically step in and I said I'm going to go ahead

12   and arrest him for criminal trespass because it was

13   obvious he was not going to answer any of our

14   questions or identify himself.

15       Q    Okay.  And at the time you made that

16   assessment, that was before you even knew who the

17   person was at that time?

18       A    That is correct.

19       Q    All right.  And so after you make the

20   decision to arrest him, you arrest him, what happens

21   next?

22       A    Once we arrest him, obviously, we're trying

23   to find out who he is.  So once he's placed under

24   arrest and told that he's under arrest for criminal

25   trespass, we remove the disguise.  And even after the

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                          October 04, 2024

Page 39

1    disguise was off, I didn't -- it still didn't register

2    with me who he was because, again, I didn't have any

3    personal animosity towards David.  I didn't know who

4    he was.  It's not like I was following him all the

5    time or keeping up with him in school even after the

6    incident with Ms. Dewey.

7            So even once a disguise was removed, I had

8    no idea who he was until we got his wallet out and got

9    his ID and I saw his name and I said, Oh, then it

10   jogged my memory and I said I know who he is.  There

11   was an issue between him and a teacher at the school.

12   And so that's when things just started to fall into

13   place.

14   **Q    And once you saw the ID and saw his name,**

15   **then you draw the conclusion at that moment that he**

16   **was there stalking Ms. Dewey?**

17       A    Not at that moment, but things started,

18   certainly started to make more sense about the

19   disguise, where he was located, which was in close

20   proximity to her car, and where her trailer was.  So

21   all of that started to fall into place and make more

22   sense as we began to talk about what had occurred,

23   what had happened, where he was found, where he was

24   running from.  So the stalking part of it again just

25   came as we began to talk about the situation and what



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                    October 04, 2024

Page 59

```
 1              (Plaintiff's Exhibit No. 5 was marked for
 2                        identification.)
 3   BY MR. WINFREY:
 4        Q    Officer Williamson, I'd like to draw your
 5   attention to the day of February 6 of 2017?
 6        A    Okay.
 7        Q    Do you recall that day?
 8        A    Yes, sir.
 9        Q    What happened that day?
10        A    Well, late in the afternoon, Ms. Dewey
11   received this e-mail and came and was looking for me,
12   I guess, as soon as she received the e-mail.  And I
13   was out in front of the school in my car getting ready
14   to direct traffic.  So she just came banging on my
15   window frantic and I had to let the buses out, so I
16   told her, and plus it was February, so I said, well,
17   just wait in my car for a minute and let me get the
18   buses out and then, you know, we can discuss whatever
19   it is that's going on.
20              So once I got the buses out, you know, she
21   showed me the e-mail and I read it and my first
22   instinct and what I did was to -- because this was a
23   continuing case from the Solicitor's office, my first
24   thing that I did was call the Solicitor's and let them
25   know, and my supervision, let them know what was going
```

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                   October 04, 2024

Page 65

1    well, correct?

2        A    I'm sorry, what?

3        Q    It talks about small claim cases as well?

4        A    Yes.

5        Q    To the term "defendants, respondents" is not

6    limited to someone that was in a criminal setting in

7    that e-mail, correct?

8        A    Well, if you're a defendant, I mean, that

9    could go either way, really.  But a defendant

10   typically in my mind would be more geared towards a

11   criminal case.

12       Q    Are you aware that there are people that

13   refer to defendant in civil cases as well?

14       A    Sure, absolutely.

15       Q    Okay.  And my only point in saying that, the

16   word "defendant or respondent" in this particular

17   e-mail is broad and covers both criminal and civil

18   people as it relates to --

19       A    Yeah, that's correct.  I understand.  And,

20   you know, just to shed some light on that, too, Ms.

21   Dewey said immediately she had no pending court

22   actions.  The only court action that she had was the

23   ongoing legal action she had with David Warth.  There

24   was no civil, no other criminal.  There was nothing

25   going on according to her.



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                    October 04, 2024

Page 76

1        Q     All right.  The e-mail also says to dismiss

2    all small claim suits; isn't that correct?

3        A     I believe it did.

4        Q     But there were no small claim suits that

5    Ms. Dewey had pending?

6        A     According to Ms. Dewey, no.

7        Q     It also says, dismiss any divorce

8    proceedings also, doesn't it?

9        A     Correct.

10       Q     And Ms. Dewey didn't have any divorce

11   proceedings either?

12       A     No.  The only legal action that she had at

13   that time that was of any consequence was the legal

14   action regarding David Warth.

15       Q     The e-mail goes further and says, for any

16   divorce case, in parentheses, the respondent no longer

17   lives near you.  That's on page 5; isn't that correct?

18       A     I'd have to go back and look.

19       Q     Okay.

20       A     Okay.  I'm sorry, where on page 5?

21       Q     Let me see if I can find the exact spot.  So

22   page 5 about midway down the page.

23       A     Okay.

24       Q     There's a paragraph that has a hyphen in

25   front of it.  It says, your lawyer.  And a few lines

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                    October 04, 2024

Page 92

1    learned that David was still at Emory, correct?

2         A    Yes, I think that's what she told me.

3         Q    And you learned that David was not driving?

4         A    According to her, yes, but I think there was

5    some question about that later on about whether he was

6    really driving or not or had a car or not.

7         Q    During your investigation, you never

8    discovered that David had a car, did you?

9         A    No, not that I recall, but I don't know that

10   that was something we really were, you know, pursuing.

11        Q    And going back to September 16th when you

12   searched him and found his ID, what you found was a

13   state ID.  You didn't find a driver's license?

14        A    That I don't know.  I can't say to that.  I

15   would -- he had an ID on him.  I don't know if it was

16   a driver's license or a state ID.  I don't recall.  He

17   had an ID, so it could have been a driver's license.

18   I just don't know.

19        Q    Fair enough.  February 9th is the bond

20   revocation hearing, correct?

21        A    Yes, sir.

22        Q    All right.  And David takes an offer plea

23   that day, correct?

24        A    Yes, he did.  And at that hearing and during

25   that plea, David also handed his personal cell phone



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                    October 04, 2024

Page 97

1      A     It's a full page of typing.

2      Q     Read the sentence to me again, so I know

3   what sentence I'm looking for.

4      A     Again, it's the very last sentence at the

5   bottom of the page.  It says after several

6   consultations with Captain Bill, and that's where it

7   goes to the next page.

8      Q     Okay.  Hold on a second.  Yes, I'm looking

9   at it.  Yes.

10     A     Okay.  Then that continues on to the next

11  page.  So after several consultations with Captain

12  Bill Wellmaker, investigators with the Gwinnett County

13  District Attorney's Office, and the prosecutors from

14  the Solicitors office, the decision was made to obtain

15  search warrants for David Warth's dorm room at Emory

16  University as well as his parents house located at 951

17  Bonaventure Way in Lawrenceville.

18          So just what I would like to put out there

19  for the record, because I've heard a lot of talk about

20  conspiracy, is that just to make note that this was

21  not me operating in a vacuum.  So the decision for the

22  source warrants as you can see was multiple and

23  involving the Solicitors office, the District

24  Attorney's office, my supervision, so they are the

25  ones that said we need to do the search warrants.

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                      October 04, 2024

Page 100

1    sure where you are.

2        A    The first sentence of the page 18 that I

3    have, that's where it says, Wellmaker, Investigators

4    with the Gwinnett County District Attorney's Office.

5        Q    I'm with you.

6        A    Okay.  So at the bottom of that one, it goes

7    into -- at the bottom of that page and continuing on

8    the next page, the items that were seized from David's

9    dorm room.  Investigator Refor located a green 32 gig

10   thumb drive on a countertop in the room.  I located an

11   iPod and index cards along with other writings.  On

12   one index card, David had written, quote, How to

13   download a TOR, which is something used by people

14   using the dark web when they want to be anonymous and

15   send anonymous e-mails.  A TOR browser was used to

16   send the e-mails to Ms. Dewey.

17            On another index card, David had written

18   DuckDuckGo, which is a search engine that people use

19   when they don't want to be tracked.  Let's see.  I

20   also located what appeared to be a brand-new TracFone

21   box which is used or that's basically an untraceable

22   phone or more commonly known as a burner phone.

23            So there was an empty box for a cell phone,

24   a TracFone box that was recovered.  The box was empty,

25   the phone was nowhere to be found.  And I believe

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

October 04, 2024

Page 101

1   there was another index card in there and it had some

2   writings on it about things that -- punishment and

3   some other things like that.  I don't -- I would have

4   to look at the index card specifically to remember

5   what he had written on there.  But the thing that

6   caught my mind, my eye the most among the other things

7   was that empty TracFone box.  Which, you know, again,

8   it's quote/unquote a burner phone that could be used

9   to send e-mails or just be anonymous.  You could do

10  things on that phone anonymously.

11          And, of course, the TOR browser, how to

12  download a TOR browser, which again, is for surfacing

13  the dark web and things like that, being anonymous.

14      Q    So we talked a lot today or I've heard a lot

15  today about TOR.  Do you know what TOR stands for?

16      A    I couldn't tell you at this point.  I did

17  then.

18      Q    Okay.  I will state that TOR stands for the

19  onion router.  Are you familiar with that?

20      A    Right.  Yes.

21      Q    It's a -- it's a company that protects

22  people's privacy, correct?

23      A    Yeah, I believe it does, yes.

24      Q    Because you thought that e-mail came through

25  the onion router, did you ever contact them to verify

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                          October 04, 2024

Page 103

```
 1   or not.  I know it's a search engine, but I don't know
 2   if they, you know, offer e-mails, too.
 3        Q    DuckDuckGo is a search engine, correct, as
 4   far as you know?
 5        A    Yeah, uh-huh.
 6        Q    Now, when you searched or when the other
 7   officers searched the Warth's home, they didn't find
 8   anything there to connect David to this e-mail; isn't
 9   that correct?
10        A    They -- they seized quite a few electronics,
11   that -- items that, you know, were listed and that
12   were reviewed by the forensics investigators.  They
13   did not find anything on those electronic items, but
14   we never found the TracFone, David's cell phone, or
15   his laptop.  Those still remain missing to my
16   knowledge.
17        Q    So the answer is yes, they didn't find
18   anything at the house to connect the e-mail to David;
19   is that correct?
20             MR. PEREIRA:  Object to form.  You can
21        answer the question.
22        A    They did not find anything on the items that
23   were seized, but we never found items we -- other
24   items we were looking for.
25   BY MR. WINFREY:
```



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

October 04, 2024

Page 105

1  because the arrest warrant for David wasn't obtained

2  until, I believe, March 17th.  So the investigation

3  continued.  There were also two meetings during that

4  time, you know, that we had served the search

5  warrants, we had gone over all the evidence, possibly

6  returned all the electronics to the Warth family, and

7  again, during the second search warrant of the Warth's

8  home, we were specifically looking for his laptop and

9  his cell phone that were never recovered.

10        So we continued the investigation.  And

11  again, there were two specific meetings involving my

12  supervision, Lieutenant Randy Holloway, the Assistant

13  Chief Bill Wellmaker, the prosecutor in the case,

14  Investigator Flynn with the DA's office also, the

15  computer forensics people, to basically say where are

16  we with the case.  What do we have.  What evidence

17  have we recovered.  What are we still looking for.

18  And what we came up with, you now, after a long period

19  of time and plus there was a -- excuse me, actually,

20  there were five search warrants because one that I

21  served at the psychotherapy office where David went.

22        So all of that evidence was reviewed by

23  multiple people.  And so the decision was made at some

24  point it March, you know, okay, we have enough

25  evidence.  The prosecution said this is a strong case



David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                          October 04, 2024

Page 106

1   based on everything we see here.  We feel confident

2   going forward with this case.  There's no problem with

3   it.  So that's when I was advised, go ahead, get the

4   warrant for terroristic threats and that's what I did

5   in late March or shortly after mid March.

6        Q    Okay.  So according to your police report,

7   the search of the dorm room, both searches of the

8   house, all the searches of the computers, and the

9   search of the IT records at Emory, all of that was

10  concluded in between February the 9th and February

11  21st according to your police report?

12       A    Right.

13       Q    Other than the therapy records that you say

14  you received and I don't know the date that you got

15  the therapy records.  Other than that, what other --

16  what other investigative work was done after the

17  21st of February 2017?

18       A    Well, I mean I can speak to what I did.  I

19  don't know what the prosecutors were doing.  I don't

20  know what the DA's investigators were doing.  But I

21  was looking at all the evidence, you know, that we had

22  collected.  We were still looking for the missing

23  laptop, the missing cell phone, the TracFone, so there

24  was two cell phones we were still looking for.  And

25  the search for the medical records or the search

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                   October 04, 2024

Page 112

1      A    I don't think there was any correlation to

2   when David was going to be released.  Again, I had no

3   idea about, I guess, the two-for-one or whatever.

4   There was never any thought about that.

5      Q    And, in fact, David was scheduled to be

6   released from jail on or about March 25th of 2017;

7   isn't that correct?

8      A    Again, sir, I don't know.  I have no idea

9   about that part of it because that played no factor in

10  my decision or the District Attorney's decision to get

11  this warrant and when he was going to be released or

12  not released.  Even had he been released, we still

13  would have pursued this.

14     Q    And other than the therapist's records,

15  there was no other evidence that was gathered after

16  the 21st of February 2017?

17          MR. PEREIRA:  Objection to form.  Asked and

18      answered.  You can answer if you know.

19     A    I just -- I don't want to say, yes or no on

20  that, I would just have to consult, you know, the

21  reports and stuff to confirm that.

22  BY MR. WINFREY:

23     Q    Okay.  Now, your affidavit for arrest

24  alleges that Brittney Dewey was contacted by David

25  Warth, it says that she was followed, place under

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                    October 04, 2024

Page 113

1    surveillance, and contacted on February the 6th and

2    February 7th at two locations; is that correct?

3         A    Let's see.  It has two locations listed

4    based on the text of the e-mail.

5         Q    Okay.  So the information that you put in

6    this warrant was based solely on the information that

7    was inside of the e-mail; is that what you're saying?

8         A    Yes, sir, that is correct.

9         Q    Okay.  And as of February 21st, 2017, you

10   had nothing to directly link David to the e-mail?

11        A    Not in the evidence that we could find, but,

12   again, we were missing his laptop and two cell phones.

13        Q    All right.  So the warrant reads in part,

14   Against Brittney Dewey and the laws of the State of

15   Georgia.  The facts of this affidavit for arrest were

16   based on:  Said accused did in violation of condition

17   of pretrial release, a copy of which is not attached.

18   Which prohibits certain behavior, did follow, place

19   under surveillance, and contact the victim, I'm

20   skipping to Brookwood High School, the Walmart

21   shopping center located at 4375 Lawrenceville Highway,

22   Tucker, Georgia 30084 in DeKalb County; did I read

23   that correctly?

24        A    Yes, you did.

25        Q    All right.  That Walmart location, that



Page 123

1    further questions.

2              MR. PEREIRA:  I have a few questions.

3                   DIRECT EXAMINATION

4    BY MR. PEREIRA:

5        Q     Officer Williamson, you testified that you

6    provided testimony to the magistrate court judge with

7    regard to the March 2017 arrest warrant; is that

8    correct?

9        A     Yes, that correct.

10       Q     And do you recall the testimony that you

11   provided to the judge on that day?

12       A     Yes, I do.

13       Q     Okay.  And did you explain to the judge that

14   the basis of the arrest warrant dealt with a

15   threatening e-mail?

16       A     Yes, I did.

17       Q     Okay.  Did you describe to the judge the

18   history with regard to David Warth and Brittney Dewey

19   who received that e-mail?

20       A     Yes, I did.

21       Q     And did that testimony include the

22   information about the threats made that were

23   transmitted from his therapist to the school?

24       A     Yes, it did.

25       Q     And did that information also include the

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                    October 04, 2024

Page 124

1    information that you had regarding David Warth's

2    trespassing at Brookwood High School wearing costume?

3         A    Yes, it did.

4         Q    Did you also include in your testimony to

5    the magistrate court information about the TOR

6    browser?

7         A    Yes, I did.

8         Q    Okay.  Can you tell us what did you tell the

9    judge you remember about how the TOR browser could

10   have been involved in this case.

11        A    Just basically what we talked about here

12   today is that a TOR browser is something that people

13   use with the dark web if they're trying to remain

14   anonymous and so they can do things or send things

15   such as e-mails and they can remain anonymous.  So

16   just explaining to the judge, you know, that the

17   sender of this e-mail used a TOR browser through the

18   TOR service as it is to send this e-mail so they can

19   remain anonymous and the e-mail couldn't be tracked.

20   And if you try to track it it would show that it just

21   kind of came from different parts of the world.

22        Q    Now, did the search warrant also get served

23   on the IT Department at Emory University?

24        A    Yes, sir, it did.

25        Q    And is it the case that they were not able

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson                                          October 04, 2024

Page 125

1    to show that David Warth used the TOR on the date

2    alleged?

3        A    They were -- they showed that David was not

4    using the TOR on the date that the e-mail was sent,

5    but they did show leading up to that, David was using

6    a TOR browser in his dorm room prior to the date that

7    the e-mail was sent.  So it was confirmed that he was

8    using a TOR browser in his dorm room.

9        Q    But if he wasn't using a TOR the date that

10   the e-mail was sent, isn't that dispositive of the

11   fact that he didn't send the e-mail?

12       A    No, because the working theory and what the

13   prosecutors with the District Attorney's office even

14   told his attorneys at that time when they brought up

15   the same argument was that they believe David and

16   David has been, so many people will tell you that

17   David is brilliant, David is very smart.  And so they

18   also, you know, told his attorneys at that time that

19   their theory is that David was smart enough not to

20   send that e-mail on the day that Ms. Dewey received or

21   the next day.  That he typed up the e-mail and then

22   set it to be sent on those days when he would not be

23   present or using the Internet in his dorm room.  So

24   that's what the prosecutors believe that he did.

25       Q    Did you explain that to the magistrate judge

David Warth vs Gwinnett County Public Schools, et al.
Officer Thomas Williamson

October 04, 2024

Page 129

```
1        A     Well, I think just to my knowledge of the
2   relationship between David and Ms. Dewey and the
3   ongoing issues, you know, between David and Ms. Dewey
4   the temporary protective orders, the arrest of David
5   from, you know, back in September of 2016, I believe
6   it was, where he came on campus, you know, in the
7   disguise in which, you know, he was charged with
8   stalking.  And we believed at that point that he was,
9   you know, coming to do harm to Ms. Dewey.
10            So I think with all of that evidence and the
11  history and the history with David and Ms. Dewey and
12  the principal even before I even got involved, there
13  was a long trail there of a lot of evidence or a lot
14  of history.  So I think any reasonable person, you
15  know, the first thought that would come to their mind,
16  you know, when that e-mail is received, is that where
17  there's probably only one person or is one person that
18  is responsible for that e-mail being sent.
19       Q     Going back to the September 2016 arrest.
20       A     Yes, sir.
21       Q     The areas that you -- when you reviewed the
22  video, the areas David Warth was seen in, are those
23  near the front of the school?
24       A     No, quite the opposite.
25       Q     If you were going to be going to the office
```