**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

DAVID C. WARTH,

   Plaintiff,

v.

THOMAS WILLIAMSON,

 Defendant.

CIVIL ACTION FILE NO.
1:23-cv-05072-MLB

**DEFENDANT'S EXHIBITS TO BRIEF IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT**

EXHIBIT D – Thomas Williamson Affidavit

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

DAVID C. WARTH,

    Plaintiff,

v.

THOMAS WILLIAMSON,

  Defendant.

CIVIL ACTION FILE NO.
1:23-cv-05072-MLB

## <u>AFFIDAVIT OF THOMAS WILLIAMSON</u>

Personally, appeared before the undersigned officer, authorized to administer oaths, Thomas Williamson, who, being duly sworn, does state under oath as follows:

1.

My name is Thomas Williamson. I am over the age of eighteen (18), competent to testify and submit this affidavit in the above referenced case with the understanding that it may be relied on by the court in adjudication of the issues pending before it.

2.

I have been employed by the Gwinnett County Board of Education as a School Resource Officer since July of 2009 and worked as a police officer for the Gwinnett County Police Department from September 1993 through July of 2009.

1

3.



4.

Prior to March of 2015 I had no knowledge of David Warth and have never had any personal animosity toward him.

5.

After I was informed about the information conveyed to Brookwood High School by Melissa Coates, I escorted Brittney Dewey to the Gwinnett County Magistrate Court to apply for a Protective Order against David Warth.

6.

In May of 2015 David Warth's mother contacted me and asked if David Warth could attend an after-school event that one of his siblings was involved in. I told David Warth's mother that it would be ok for David to attend since the victim, Ms. Dewey would not be on campus. I had no personal animosity toward David Warth, and did not mind if he attended an event after school to support one of his siblings.

7.

On September 6, 2016 I was called to a subdivision street off of Dogwood Road in Snellville, Georgia just down the street from Brookwood High School to assist with a report of someone trespassing on the campus and fleeing when he was confronted by the school security officer.

8.

Upon arriving at the scene, I observed fellow School Resource Officer Wiley Gammon questioning a young man wearing a disguise which included sunglasses, a fake beard, a hair net, neoprene gloves and a baseball cap, I later learned that the young man was David Warth.

9.

I observed Officer Gammon ask David Warth numerous times to remove the disguise, identify himself, explain what he was doing on campus and why he ran when confronted.

10.

David Warth refused to provide any information to Officer Gammon and requested to speak to his attorney. Officer Gammon was handling the initial investigation, so I stood back and let Officer Gammon question David Warth. Officer Gammon was very generous to David Warth. Officer Gammon let David Warth use his cell phone to contact several attorneys that had represented David Warth in the past. David Warth would not identify himself, or remove his disguise. David Warth refused to cooperate with law enforcement, and stated that he only wanted to speak with his attorneys. Officer Gammon and I allowed David Warth to stay on the cell phone, trying to get an attorney to speak with him for eighteen (18) minutes. I was the senior officer on scene, and it was clear we were at an impasse, so I made the decision I would place the (unknown person at that time) under arrest for trespassing. My decision to arrest at this point was also due in part to information I received from a citizen witness on scene, as well as information relayed to me by Gwinnett County Police Officers who arrived on scene a short time before David Warth was arrested.

11.

After David Warth's repeated refusal to provide his name, remove the disguise or explain why he was on the campus of Brookwood High School wearing a disguise I made the decision to arrest David Warth. I did not know the person wearing the disguise was David Warth at the time I made the decision to arrest him.

12.

While on the scene with Officer Gammon and David Warth, several Gwinnett County Police officers arrived in response to two separate 911 calls from citizens. Officer Gammon and I were unaware of the calls to Gwinnett County 911, since our departments operate on different radio channels. The first 911 call came from a clerk at a local drug store where David Warth purchased his disguise. David Warth entered the drug store not wearing a disguise, and proceeded to purchase the items used for his disguise. After purchasing the items for his disguise, David Warth entered a bathroom inside the drug store and proceeded to put his disguise on. David exited the store wearing the fake beard, neoprene gloves, sunglasses, hair net, and ball cap. David Warth's appearance after emerging from the drug store bathroom, alarmed the clerk inside the drug store so much, that she felt compelled to call 911 and alert the Gwinnett County Police about David Warth's behavior. After exiting the drug store in disguise, David Warth proceeded to walk toward Brookwood High School a few miles away.

13.

A second citizen called 911 after seeing David Warth walking toward Brookwood High School. The second citizen stated she could tell David Warth was wearing an "obvious disguise" and his appearance alarmed her. The second citizen stated that she had children who were attending Brookwood High School, and she was greatly concerned when she saw David Warth enter the Brookwood High School student parking lot on foot, heading toward the back of the high school. The second citizen said she called 911 and alerted the Gwinnett County Police. The second citizen stated that she encountered David Warth a second time as he was running away from Brookwood High School after being confronted by the campus security officer. The second citizen informed David Warth that she had called 911 and David Warth told her, you're messing everything up, or words to that effect. The second citizen approached me as Officer Gammon was questioning David Warth, trying to find out his identity, and what he was doing on the campus of Brookwood High School. The second citizen told me about David Warth's alarming behavior, and how concerned she was for her children who were inside Brookwood High School. The second citizen told me that she had called 911, and that's also when several Gwinnett County Police officers arrived and informed me that they had in fact received two different 911 calls regarding David Warth and his suspicious behavior. It was only after I consulted with the Gwinnett County

6

Police Officers on scene, and the second concerned citizen, that I made the decision to arrest David Warth for criminal trespass.

14.

The fact that David Warth was wearing a disguise would not provide his name or reason for being on the campus of Brookwood High School and had fled from a security officer led me to believe that if we did not arrest David Warth at that time, we would have no way of finding him to arrest him if we sought a warrant prior to arrest.

15.

After I arrested David Warth on September 6, 2016 I conducted a search of David Warth and discovered in his wallet and identification card with his name. After seeing his name I made the connection to David Warth's previous reported threats toward Brittney Dewey. I told Officer Gammon and the Gwinnett County Police officers on scene, that I was familiar with David Warth, and that Ms. Dewey had a previous protection order against David Warth. As I thought about David Warth's behavior, the disguise he was wearing, and where he was caught by the security officer, I believed that David Warth was possibly at the school to attempt to locate, and possibly harm Ms. Dewey. David Warth was caught just a few yards from the parking lot where Ms. Dewey parked her car, and less than a hundred yards from where her classroom was located. Based on the fact that David Warth was wearing gloves at the time he was apprehended, I suspected that he may have

had a weapon as well. It's unknown if David Warth had a weapon and discarded it somewhere after he was caught by campus security. David Warth was a former student at Brookwood High School just the previous year, and he knew where the front office was located, and that the area he was caught in was off limits to non-student's. When David Warth was confronted by the campus security officer near the teachers parking lot behind Brookwood High School, he did not choose to identify himself. Instead, David Warth ran away from the security officer when ordered to stop, jumped a four foot high retaining wall, and fled the campus. This is when he ran into the second concerned citizen who told him she had called 911.

16.

After I arrested David Warth on September 6, 2016, I transported David Warth to the Gwinnett County Detention Center and after transferring his custody to the Gwinnett County Sheriff's Department immediately went to the Magistrate Court and presented written and oral testimony to the Magistrate Judge articulating probable cause for the arrest.

17.

Judge Emily Powell signed and entered the arrest warrant at 11:22 a.m. on September 6, 2016.

18.

The Gwinnett County Solicitor's Office filed a formal accusation against David Warth on September 27, 2016 charging David Warth with Stalking and

Criminal Trespass for Unlawful Purpose. The accusation was later amended to add the charge of wearing a mask.

19.

Brittney Dewey sought and was granted a stalking protective order against David Warth by Magistrate Judge Emily Powell on January 31, 2017.

20.

Brittney Dewey approached me on the campus of Brookwood High School on the afternoon of February 6, 2017 in a frantic state and informed me that she had received an email at school threatening to kill her, her family and friends if she did not drop all pending criminal and civil proceedings.

21.

The email was sent to Ms. Dewey's Gwinnett County School District email address and was received while Ms. Dewey was at Brookwood High School. from an email account named jacobportmeir @signait.com but stated that it was being sent through an anonymous email service that the police could not track.

22.

The email revealed that Ms. Dewey was being watched and referenced a photo that the writer had taken of Ms. Dewey in a Walmart parking lot next to Ms. Dewey's house "in the neighborhood behind Cofer Circle." The e-mail contained numerous references to things that would only pertain to Ms. Dewey. The e-mail listed a nick name that Ms. Dewey went by, and named several of her relatives and

9

friends. The sender of the e-mail put enough references in the e-mail sent to Ms.
Dewey that would make it very clear that the e-mail was meant for Ms. Dewey
alone, and no one else. Ms. Dewey had no other pending legal cases, except the
stalking case with David Warth. Therefore, David Warth was the most obvious
suspect for sending the threatening e-mail to Ms. Dewey.

23.

After receiving Ms. Dewey's report I contacted the Gwinnett County
Solicitor's Office to inform them of the threat received by Ms. Dewey. At no time
during this entire investigation did I act alone, or make a decision about this case
without first consulting with my immediate supervision, prosecutors form the
Gwinnett County Solicitors Office, and with prosecutors from the Gwinnett
County District Attorneys office. After reading the e-mail that Ms. Dewey
received, my first phone call at the school with Ms. Dewey present, was to the
prosecutor of David Warth's pending stalking charge. I asked the prosecutor what
we should do. I simply read the e-mail to the prosecutor, and the prosecutor came
to the same conclusion as me. Which was that David Warth was most likely
responsible for sending the e-mail. The prosecutor told me she would handle any
immediate legal action against David Warth, and I was to make sure Ms. Dewey
was safe at school. The prosecutor acting on her own judgement decided that a
hearing needed to be held to revoke David Warth's bond. I stayed with Ms.
Dewey, and came up with a safety plan for here while she was at work. I notified

the principal of Brookwood High School about the e-mail, and he assisted me with making sure Ms. Dewey was safe at work. Ms. Dewey received the same threatening e-mail the very next day while at work.

24.

David Warth was the primary suspect because of David Warth's history with Ms. Dewey, the fact that just days before the email Ms. Dewey had testified against David Warth in support of the stalking protective order, the fact that David Warth had pending criminal charges for coming onto the campus at Brookwood High School in a disguise on September 6, 2016 and the fact that there was no other individual with any motive to send such an email to Ms. Dewey.

25.

On February 9, 2017, I attended a hearing to revoke the bond of David Warth based upon the threatening email received by Brittney Dewey.

26.

At the bond revocation hearing David Warth entered a negotiated guilty plea to the misdemeanor charges of stalking, wearing a mask and criminal trespass and was sentenced to a 90-day custodial sentence to the charges.

27.

At the end of the bond/plea hearing David Warth was taken into custody to begin his custodial sentence.

11

28.

Prior to being taken into custody I saw David Warth handing his cell phone to his mother in the courtroom.

29.

As part of my investigation into the threatening email, I obtained a search warrant for David Warth's dorm room at Emory University. My supervision was very involved with this investigation from the moment the first threatening e-mail was received by Ms. Dewey. My lieutenant assigned another officer to work with an investigator from the Gwinnett County District Attorney's office, to obtain a search warrant for the Warth family home. I executed the search warrant at David Warth's dorm room at Emory University, with the assistance of Emory Police. My lieutenant took several officers along with him to serve the search warrant at the Warth family home in Gwinnett County.

30.



31.

I coordinated my investigation with my supervision, prosecutors and investigators at the Gwinnett District Attorney's Office, as well as prosecutors from the Solicitors Office.

32.

The search of David Warth's dorm room uncovered an empty tracfone or "burner phone" box, a sticky note with "how to download TOR browser" written on it, a note with the words "DuckDuckGo" written on it and other writings about punishment.

13

33.

The threatening e-mail sent to Ms. Dewey was sent using a TOR browser, and an e-mail service that prevents e-mails from being tracked.

34.

Something that was uncovered during this investigation, was that while David was still a student at Brookwood High School in October of 2014, multiple e-mails were sent to Brookwood staff members threatening mass homicide at Brookwood High School. Staff members at Brookwood High School received a series of threatening e-mails over a period of several days, all threatening to kill multiple students and staff members with guns and explosives. The mass homicide e-mails were sent using the exact same anonymous e-mail service that was used to send the threatening e-mails to Ms. Dewey. It was also at this time that David Warth was complaining about perceived mistreatment by Ms. Dewey, and demanding meetings with the principal and Ms. Dewey. I along with my supervision investigated the mass homicide e-mails that were sent in 2014, but we were not able to determine who sent the e-mails since those e-mails were sent through the same anonymous e-mail service.

35.

14



36.

A search of the Emory University IT records revealed that David Warth had

been accessing the TOR Browser through the Emory Network using a Macbook

computer, but not on the date and time that the email was sent to Ms. Dewey.

Prosecutors believed that David Warth crafted the e-mail, and set dates and times

when the e-mail would be sent automatically, so it would look like he did not send

the e-mail. We also learned through this search warrant that David Warth had his

own personal Macbook computer that he used while in his dorm room. That

Macbook computer was used to access a TOR browser on multiple occasions from

15

David Warth's dorm room. David Warth was the only person living in that dorm
room.

37.

After the search warrant at the Emory IT department, we realized that David
Warth's Macbook was still missing. During the initial search of the Warth family
home by my lieutenant and other police officers, multiple electronic devices were
seized. We compared the identifying information we received from the Emory IT
department for the computer David Warth was using in his dorm room, to the items
that were seized during the search of the Warth family home. We realized that
David Warth's personal computer, and two of his cell phones were still
unaccounted for. The lead prosecutor from the Gwinnett County District
Attorney's office asked our department to serve a second search warrant at the
Warth family residence, in hopes of locating David Warth's missing laptop and his
two cell phones. The District Attorney's office assigned a criminal investigator and
two computer forensic investigators, to accompany my supervision, myself and
other officers during a second search of the Warth family residence. After two
separate searches of the Warth family home, David Warth's personal laptop, cell
phone, and "burner" Tracphone were not located.

38.

After review of all of the evidence, multiple meetings with the Gwinnett
County District Attorney's Office and my supervisors, the decision was made to

16

obtain a warrant for the arrest of David Warth for aggravated stalking based upon David Warth having sent the threatening email to Ms. Dewey at Brookwood High School and referencing in that email that Ms. Dewey had been surveilled at the Walmart near her home in violation of the conditions of David Warth's pretrial release for the September 6, 2016 charges.

39.

It was my belief, and the belief of the District Attorneys Office that the investigation supported the conclusion that David Warth authored and sent the threatening email. I met with the lead prosecutor in the Gwinnett County District Attorney's office and was told by the prosecutor that there was plenty of evidence to proceed with this case, and that the District Attorney's office would proceed with the prosecution of David Warth if I obtained a warrant for his arrest. Nearly a month had passed from the last search warrant being served to me obtaining the final arrest warrant for David Warth with the encouragement of the District Attorneys Office. I took as much time as I could take with this case trying to gather as much evidence as we could possibly gather. At no time did I ever act alone, and the ultimate decision to criminally charge David Warth with aggravated stalking was made by the District Attorneys office. I could not make the arrest, if the District Attorneys office would not prosecute the case. I was partners with the District Attorneys office during every stage of this investigation.

17

40.

On March 24, 2017 I completed the arrest warrant application form and affidavit in support of arrest and also appeared before Magistrate Judge William Brogdon to provide sworn oral testimony regarding the details of the investigation. During my sworn testimony to Judge Brogdon I laid out an objective version of the facts uncovered during the investigation, including those supporting David Warth's claim that he had not sent the email.

41.

In the oral testimony I provided to Judge Brogdon on March 24, 2017, I explained the stalking charges against David Warth arose out of an email that had been sent to Ms. Dewey at Brookwood High School and that the email referenced the surveillance of Ms. Dewey at a Walmart near her home in Tucker, Georgia.

42.

In my oral testimony to Judge Brogdon on March 24, 2017 I explained that investigators had conducted searches of David Warth's college dorm, family home, therapist's office and Emory University IT records, but investigators were unable to find David Warth's laptop which he regularly used to access the Emory University network or his personal cellphone.

43.

In my oral testimony to Judge Brogdon on March 24, 2017 I explained that investigators were unable to forensically trace the email sent to Ms. Dewey by David Warth.

44.

During my oral testimony to Judge Brogdon on March 24, 2017, I explained that at the time she received the email, Ms. Dewey had no civil or criminal matters pending other than a temporary protective order she had obtained against Plaintiff and the criminal charges related to the Plaintiff's September 6, 2016 trespass.

45.



46.

Following my testimony and questioning from Judge Brogdon, Judge Brogdon determined that there was sufficient probable cause for David Warth's arrest.

47.

On March 28, 2024 I appeared and testified at a preliminary hearing where a Magistrate Judge Gene Cantrell presided. During the hearing I was cross-

19

examined by David Warth's attorney Lyle Porter about the evidence against David Warth.

48.

On March 28, 2024, after hearing testimony regarding the evidence against David Warth, Magistrate Judge Gene Cantrell found that there was sufficient probable cause for David Warth's continued incarceration.

49.

My primary job responsibility as a School Resource Officer for the Gwinnett County School District is to protect the safety of students and staff of the Gwinnett County School District.

50.

During my investigations, arrests and involvement of the prosecution of David Warth I have never been motivated by personal animus, ill will or any intent to cause harm to David Warth. Instead, my actions in these cases were part of my professional responsibilities and were motivated by my desire to keep the staff and students of the Gwinnett County School District safe.

Pursuant to 28 U.S.C.A. § 1746, by my signature below, I declare, under penalty of perjury, that the foregoing is true and correct. Executed on January 03 , 2025

THOMAS WILLIAMSON