UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DAVID WARTH ,
 Plaintiff,

                                        CIVIL ACTION
v.                                      FILE NO.: 1:23-cv-05072-MLB
GWINNETT COUNTY PUBLIC )
SCHOOLS Et al.
Defendants.

<u>Plaintiffs' Response to WILLIAMSON'S Motion for Summary Judgment</u>

COMES NOW PLAINTIFF by and through attorney of record, Kamau K.

Mason, Esq. in the above-styled action and hereby files this Response to the

Defendant's Motion for 12(b) dismissal.  The Plaintiff shows:

I.        <u>STATEMENTS OF FACTS</u>

In September 2016, Plaintiff David Warth ("David") was a student at Emory

University.  Before attending Emory, David attended Brookwood High School in

Gwinnett County, Georgia.  Defendant Williamson worked at Brookwood High

School.  At all times material herein, Brittney Dewey worked at Brookwood High

School.  When David attended Brookwood High School, Defendant Dewey was

David's special education teacher as he was served for autism spectrum disorder.

During Summer 2016, Officials from Defendant School System told David via

e mail to go to Brookwood High School to obtain a copy of his high school

records.  On or about September 6, 2016, David went to Brookwood High School

to obtain his high school records.  When David arrived on campus, he had on a baseball cap, a bright orange costume beard, and sunglasses.  One of the school's security officers stopped David near the football field.

After a brief encounter with the security officer, David left the campus voluntarily. Security chased David off-campus and into a neighborhood close to Brookwood HS.  Defendant Williamson and other law enforcement officers came to the scene in the neighborhood where David and the security guard were located. Police questioned David about his identity and his purpose for being at the school.

David did not answer their questions and instead tried to contact attorneys.  The Police detained & arrested David, removing his baseball cap, his bright orange costume beard, and sunglasses.  Simultaneously, they searched him and found his identification.  But they did not find any items that would be considered a threat.

Once Williamson discovered that this was David, Defendant Williamson, without any supporting facts or having witnessed a crime, concluded that David came to Brookwood HS to see Dewey and arrested David for stalking her.

David bonded out of jail and was required to stay away from Brittney Dewey. On or about December 13, 2016, the Gwinnett County Solicitor's Office charged David with stalking Defendant Dewey, criminal trespass, and wearing a mask in public; hereby noted as Accusation No. 2016-D-06001-5.

In January 2017, Dewey filed a petition for a temporary restraining order ("TRO") against David even though he had not violated the "no contact" provision of his bond. Despite David's objection to this request, on or about January 31, 2017, the Magistrate Court Judge granted Dewey's request.

<u>Defendant Dewey Receives Threatening Anonymous Email</u>

Two days later on February 6, 2017, Dewey received a threatening, anonymous email at Brittney_dewey@gwinnett.k12.ga.us. This email was sent from this email address <u>jacobportmeir@sigaint.org</u>. The email was 8-10 pages long. However, the message did not contain identifiers such as: "Brittney, " "Dewey, " "David, " "teacher," or "student". The email also instructed the recipient to dismiss her small claims, suits and divorce matters. But Dewey did not have a pending small claims at that time divorce proceedings. Dewey blamed David for sending the email. Dewey took the email to Defendant Williamson. Defendant Williamson read the anonymous email. Defendant Williamson immediately concluded that David Warth wrote the email and sent it to Dewey.

However, the email was not the first threatening message received by an Brookwood High School. School Police had a policy of sending threatening emails to the FBI for investigation. But Williamson did not inform the FBI.

After reading the email, despite having no proof that David Warth sent the e-mail, Dewey and Williamson, on February 6, 2017 communicated with the

Gwinnett County Solicitor General's Office and requested that David's bond be revoked.  Because of the communication, the Assistant Solicitor General filed a motion to revoke David's bond.

In February 2017, a hearing was scheduled on the State's motion to revoke David's bond.  David sought to distance himself from the anonymous email by attempting to have his parents come off of his bond so that he could voluntarily go into jail on the misdemeanor case to await a final hearing.

However, at the hearing, David and his parents were informed that the parents could not come off of the bond and that David could not voluntarily enter the jail. To maintain his innocence and distance himself from the anonymous email, David entered an Alford plea to the charges in the misdemeanor case.  David's sentence was 90 days in jail followed by several months of probation.

Shortly after beginning his 90-day jail sentence, David and his parents learned that Defendant Williamson was not satisfied with David taking an Alford plea to the misdemeanor charges.  To implicate David, Defendant Williamson, a Gwinnett School Police Officer arranged for the Warth's home and for David's Emory University dorm room to be searched.

While the Warth family was in Court addressing the State's motion to revoke David's bond, a team of law enforcement officers that were working with Defendant Williamson were dispatched to Warth's home to search it.

Defendant Williamson's team found nothing in the Warth family home that linked David to the anonymous email despite taking computers, laptops, iPods, USB drives, hard drives, etc.

Defendant Williamson's team searched all of the electronic devices that were taken from the Warth's family home and found nothing linking David with the anonymous email. They also found nothing linking David to the e-mail at his Dorm Room at Emory.

The defendant went to the Warth's home to search it a second time. During the second search, Defendant Williamson and his team found nothing that linked David to the anonymous email that Dewey received.

Defendant Williamson did find an iPod with "David Christopher Warth" inscribed on the back of it. Defendant Williamson and his team found nothing on David's electronic device that linked him to the threatening email.

Defendant Williamson then returned to Emory University with a search warrant for Emory's IT records. Defendant Willaimson created a report.    In his police report, Williamson stated:  "When I met [Defendant Dewey] on the morning of 02-07-17, she told me that she had received the same e-mail again from the same e-mail account. This time the subject line was changed to "Final Notice.  I was confident that David Warth was behind the e-mails, but I needed assistance in trying to track the e-mail account that the e-mails were coming from.  The e-mails

were being sent from an e-mail service that can't be tracked…called SIGAINT.
The e-mails are sent use a TOR browser via the "Dark Web."

Again, Defendant Williamson's attempt to link David to the email was
unsuccessful. Emory's IT records revealed that David did not use TOR on the date
the anonymous email was sent to Dewey. Nor did the author of the email did use
TOR to send the email. See TOR Affidavit Plaintiff complaint Exhibit 8.

Finally, Defendant Williamson realized that he had no evidence to link David to
the anonymous email. On February 21, 2017, Defendant Williamson wrote in his
police report: "As of 02-21-17 no new evidence has been located that directly links
[David Warth] with the email that was sent to [Defendant Dewey] at Brookwood
High School."

After February 21, 2017, Williamson did not conduct any further investigation
into this case. Pursuant to the Alford plea in the misdemeanor case, David was
scheduled to be released from jail. Williamson did not want David released.

Defendant Williamson filed an infirmed false felony arrest warrant against
David despite there being no evidence connecting David to the e-mail[s]. The
infirmed warrant accused David of stalking Defendant Dewey in violation of the
"no contact" provision in his bond in the misdemeanor case. Defendant
Williamson falsely alleged: *Said accused did in violation of a condition of pretrial
release [.] … did follow, place under surveillance, and contact the victim at 1255*

*Dogwood Road, Snellville, GA 30078 (Brookwood High School) and The Wal-Mart shopping center located at 4375 Lawrenceville Highway, Tucker, GA 30084 in DeKalb County. The above location(s), which is not the residence of the Accused; without the consent of [the] victim and for the purpose of harassing and intimidating the victim by threatening the victim's life. However, while being deposed, Brittney Dewey stated that she did not go to Walmart on the date noted in the warrant.* **See Brittney Dewey Deposition** *page 74 -75,*

Defendant Williamson obtained an infirmed warrant for David based on false statements made in the arrest warrant application & David was held in jail after the confinement portion of his misdemeanor sentence was completed for 3.5 years.

<u>David Withdraws His Guilty Plea in The Misdemeanor Case</u>

David Warth filed a motion to withdraw his plea. The motion was granted and the order stated: "*The Court does not find that there was a sufficient factual basis for Defendant Warth to enter a plea of guilty to the charges set forth in the Accusation. Therefore, the Motion to Withdraw Guilty Plea is hereby* **<u>GRANTED</u>**, *and Defendant's sentence shall be set aside and vacated.*"

The withdrawal of the Plea based upon there being no factual basis also meant that there was no probable cause at the time of the arrest.

The Court reinstated David's bond in the misdemeanor case. However, David could not BOND OUT of jail because the felony arrest warrant was in place.

After several failed attempts to obtain a bond and sitting in jail for 3.5 years, the Court finally granted David a bond and he was placed on house arrest and had to wear an ankle monitor. In November 2021, the DA's Office Dismissed all charges against David including the felony aggravated stalking the misdemeanor case after reviewing the results of a lie detector test administered by a former federal agent.

## II.   <u>Summary Judgment Dismissal Standard</u>.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. <u>Whatley v. CNA Ins. Co.</u>, 189 F.3d 1310, 1313 (11th Cir. 1999). The court must view all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. <u>St. Charles Foods, Inc. v. America's Favorite Chicken Co.</u>, 198 F.3d 815, 819 (11th Cir. 1999).  The factual dispute must be genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## III.   <u>Arguments and Citations to Authority</u>

### A. <u>Defendant Loses Qualified Immunity under 42 USC 1983 malicious prosecution Because Williamson Knowingly Filed an Infirmed Warrant.</u>

"To overcome qualified immunity, a plaintiff must prove that the defendant violated a constitutional right that was 'clearly established' when the violation

allegedly occurred." Aguirre, 965 F.3d at 1168. "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." Id. District of Columbia v. Wesby, 138 S.Ct. 577, 589 (2018)).

The Supreme Court and the Eleventh Circuit have, since at least 1986, held that where a warrant application is "so lacking in indicia of probable cause as to render official belief in its existence unreasonable, [] the shield of immunity [may] be lost." Malley v. Briggs, 475 U.S. 335, 344 (1986).

But such a reflection is desirable, because it reduces the likelihood that that officer's request for a warrant will be premature. Premature requests for warrants are at best a waste of judicial resources; at worst, they lead to premature arrests, which may injure the innocent or, by giving the basis for a suppression motion, benefit the guilty. Id. at 343-44 (1986).

To show that individual officers "violated a clearly established right under the Fourth Amendment to be free from unreasonable seizure as a result of malicious prosecution," a plaintiff must prove both "a violation of [her] Fourth Amendment right to be free of unreasonable seizures and the elements of the common law tort of malicious prosecution." Aguirre, 965 F.3d at 1157 (quoting Paez v. Mulvey, 915 F.3d 1276, 1285 (11th Cir. 2019) (internal quotation marks omitted)). Under the common law elements of malicious prosecution, a plaintiff must prove: (1) that the

officers instituted or continued a criminal prosecution against her; (2) with malice and without probable cause; (3) that terminated in her favor; and (4) caused damage to her. Id. "These elements are 'ultimately controlled by federal law.'" Id. Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010) (quoting Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003)).

In this Circuit, it has been established for decades that an officer violates a clearly established constitutional right where the officer swears an affidavit for a warrant that alleges scant and conclusory allegations that undisputedly fail to establish probable cause. Kelly, 21 F.3d at 1555 (noting that by seeking an arrest warrant on the basis of such a conclusory affidavit, the officer appears to have violated a clearly established constitutional right); Garmon, 878 F.2d at 1408-09 (rejecting the defendant sheriff's argument that even if the warrant was issued without probable cause, he was shielded from liability by qualified immunity). See also, Smith v. Munday, 848 F.3d 248, 256 (4th Cir. 2017).

In addition, as the Court noted in Aguirre, for more than three decades, it has been clearly established that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for arrest in order to detain a citizen, if such false statements were necessary to the probable cause. 965 F.3d at 1168-69 (Jones 174 F.3d at 1285). see also, Leon, 468 U.S. at 923 n.24.

### (1) Officers instituted or continued a criminal prosecution against him;

Here, Officer Willaimson did target David Warth in his attempt to prosecute him for crimes such as trespass for coming to the school to retrieve his records, implicating him on that day for stalking Britney Dewey.

Moreover, the Defendant implicated David Warth in sending the threatening e mail. Finally, the Defendant noted that there was no evidence connecting David to the online message and still accused and prosecuted him for the crime. And, while under oath, Brittney Dewey herself has testified that she was not present at the alleged Walmart on the date noted in the warrant. See Deposition of Brittney Dewey Page: Deposition of B. Dewey Pages 74 -75: Line 22: Q On the day that you received the e-mail, did 23· ·you go to Walmart? Line 24: A: On the day I received the e-mail did I go to 25· ·Walmart? Page 75/ Line 4: A. No

### 2    With malice and without probable cause;

Qualified immunity Shields government officials executing discretionary responsibilities from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. COURSON v. McMILLIAN | 939 F.2d 1479 (1991), Harlow v. Fitzgerald :: 457 US 800 (1982). Qualified immunity is a question of law to be decided by the court. The test for qualified immunity is one of objective reasonableness in evaluating the conduct of the government official claiming its

protection. All but the plainly incompetent or those who knowingly violate the law find protection in qualified immunity. Id., Malley v. Briggs :: 475 US 335 (1986).

Plaintiff Warth asserts that Defendant Williamson intentionally and/or recklessly made misstatements or omissions necessary to support the warrant.  In the face of such an assertion, "[t]he plaintiff must first explain how any inaccuracies were material, i.e., 'necessary to support the warrant.'" Sylvester v. Fulton Cnty Jail, 94 F.4th 1324, 1329 (11th Cir. 2024).  "Next, plaintiff must evidence in the record that would allow a reasonable jury to find that the inaccuracies in the affidavit did not result from a 'reasonable mistake' but stemmed from intentional or reckless deception." Id. at 1330 (cite omitted).

The sole focus of his investigation was to prove that Plaintiff Warth sent the email to Ms. Dewey; not solve crime.  At the end of the investigation, Defendant Williamson concluded that he had no evidence linking Plaintiff Warth to the email and he stated such in his police report.

Notwithstanding the fact that he knew that he had no evidence linking Plaintiff to the email, Defendant Williamson swore out an arrest warrant against Plaintiff based solely on the email.  The arrest warrant alleged:[1]

> *Said accused did in violation of a condition of pretrial release [....]*
> *Which prohibits certain behavior, did follow, place under*

---

[1] We analyze the warrant line by line to evaluate whether Defendant Williamson intentionally or recklessly made misstatement or omissions necessary to support the warrant.  See, Sorrells v. Dodd, 2024 WL 3981781 (11th Cir. Aug. 29, 2024).

*surveillance, and contact the victim at 1255 Dogwood Road, Snellville, GA 30078 (Brookwood High School) and **The Wal-Mart shopping center located at 4375 Lawrenceville Highway, Tucker, GA 30084 in DeKalb County**. The above location(s), which is not the residence of the Accused; without the consent of victim and for the purpose of harassing and intimidating the victim by threatening the victim's life. Stating that the victim and the victim's family and friends would be killed if the victim did not file a motion to dismiss any pending cases the victim currently had in place.*

The allegations in the arrest warrant make three key accusations: (1) Plaintiff followed, surveilled, or contacted Defendant Dewey at Brookwood High School on or around February 6, 2017; (2) Plaintiff followed, surveilled, or contacted Defendant Dewey at Walmart in DeKalb County on or around the same date; and (3) Plaintiff threatened to kill Defendant Dewey and her friends or family if she didn't dismiss her cases. The first accusation was based on Defendant Williamson belief that Plaintiff sent the anonymous email to Ms. Dewey. The second and third accusations were based on statements contained in the anonymous email.

Alongside the fact that the warrant itself does not [even] mention a threatening e-mail, Defendant Williamson intentionally and/or recklessly omitted the following facts from his affidavit: [1]that the first accusation in the affidavit was based on Defendant Williamson's belief that Plaintiff sent the anonymous email; [2]that Defendant Williamson and his fellow law enforcement officers had searched Plaintiff's parents' home and Plaintiff's dorm room, recovered and searched more than 20 computer/electronic devices; and found no evidence connecting Plaintiff to

the anonymous email; [3]that Defendant Williamson's believed that the anonymous email was sent through TOR; [4]that Emory University's IT records showed that Plaintiff did not access TOR on the day the anonymous email was sent; and [5] that during the search of Plaintiff's parents' home and Plaintiff's dorm room, the law enforcement officers did not find any picture of Ms. Dewey.

Defendant Williamson attempted to rehabilitate his infirm warrant with self-serving affidavits from himself and from the Magistrate Court judge that signed the infirm warrant. These affidavits do not rehabilitate the infirm warrant.

Instead, they highlight the omissions and misstatements made by Defendant Williamson. The judge's affidavit simply stated that he heard oral testimony from Defendant Williamson. It does not recount what, if anything, Defendant Williamson may have said to the judge.

What is clear from both affidavits is that Defendant Williamson omitted and misstated information to the judge in order to secure the arrest warrant.

Notwithstanding these above noted omissions, Williamson's most alarming omission and misstatement. His most glaring omission was that he knew that he did not have any evidence to link Plaintiff to the email. After his investigation was completed, Williamson stated in his February 21, 2017, police report:

> **As of 02-21-17 no new evidence has been located that directly links [Plaintiff] with the email that was sent to [Ms. Dewey] at Brookwood High School.**

This information was not presented to the magistrate court judge.

In reference to the Defendant's State of Mind, Plaintiff must point to evidence in the record that would allow a reasonable jury to find that Defendant Williamson intentionally lied or recklessly misled the magistrate judge.  See, Sylvester, 94 F.4th at 1332.  "[Defendant's] state of mind is an issue of fact that, if genuinely disputed, a jury will have to resolve.  Id.  "Evidence of intent could include evidence that [Defendant Williamson] had actual knowledge of the exonerating information discussed in the preceding [section].

Defendant Williamson's actual knowledge of exculpatory evidence is undisputed as in February 2017, Defendant Williamson stated in his police report that he had no evidence linking Plaintiff to the anonymous email.  From that date on, he obtained no additional evidence rebutting the idea and a reasonable jury could find that Defendant Williamson intentionally or recklessly misled the magistrate court into believing that there was probable cause to issue the warrant.

### 3    That terminated in his favor; and

The Plaintiff's case was Dismissed by the District Attorney who saw fit to Nolle Prosequi the matter and all associated cases.

### 4    Caused damage to him.

David Warth spent over 3 years in Gwinnett County jail.  He should have been attending Emory University. Plaintiff functions with Autism, and the incarceration

did permanently impact David Warth who still sees a therapist to deal with the scars from the prosecution, detention and abuse.  See Deposition of David Warth.

### a. Even Arguable Probable Is Not an Analytical Standard for Malicious Prosecution.

The Aguirre Court explained, "arguable probable cause" is only relevant where the probable cause inquiry turns on facts and circumstances within the arresting officer's knowledge. 965 F.3d at 1158-59.  Because a malicious prosecution claim looks to what the judicial officer knew, the "arguable probable cause" inquiry is inapplicable. Id.  Here, the Magistrate Court Judges ruled upon an arrest warrant that was [a] false on the face, [b] lacking in information or [c] infirmed based upon the arresting officer making statements that have been rebutted by the alleged victim herself as Brittney Dewey who has testified that she did not go to a Walmart on the date that she received the e-mail, which directly contradicts the notorious e mail warrant.  Deposition of B. Dewey Pages 74 -75:  Line 22:  Q On the day that you received the e-mail, did 23· ·you go to Walmart?  Line 24:  A: On the day I received the e-mail did I go to 25· ·Walmart?  Page 75/ Line 4: A. No.

### B. Defendant is Not Immune Because Genuine Issues of Material Fact Exist in Reference to Plaintiff's Federal 42 USC 1983 & State Based False Arrest & False Imprisonment Claims In for the September 26th Arrest.

The plaintiff alleges and re-incorporates the arguments presented in the Federal Malicious prosecution claim; specifically, those involving the existence of a Right to remain free from unlawful arrest.  Plaintiff asserts that the Defendant was malicious in his arrest outside of Brookwood HS on both a Federal and State based level and provides a complete analysis for both and argues that the veils of both Official and Qualified Immunity have been pierced by malice and a lack of probable cause.

In Georgia, "a public officer or employee may be personally liable for his negligent ministerial acts, [but] he may not be held liable for his discretionary acts unless such acts are willful, wanton, or outside the scope of his authority." Gilbert v. Richardson, 264 Ga. 744, 752, 452 S.E.2d 476 (1994). A defendant is liable for discretionary acts that involve either actual malice, which involves a "deliberate intention to do wrong[,]" or actual intent to cause injury, which involves "an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury." Adams v. Hazelwood, 271 Ga. 414, 414, 520 S.E.2d 896, 898 (1999); West v. Davis, 767 F.3d 1063, 1072 (11th Cir. 2014). This threshold inquiry is a "question of law for the court to decide." Wyno v. Lowndes Cnty., 305 Ga. 523, 527, 824 S.E.2d 297, 301 (2019).

To be entitled to a right of action for false arrest, Georgia law requires the arrest be made "under process of law, without probable cause, when made maliciously."

O.C.G.A. § 51-7-1. Georgia courts have held that "under process of law," for the purposes of false arrest claims, requires the arrest be made pursuant to a warrant. Ferrell v. Mikula, 295 Ga. App. 326, 329, 672 S.E.2d 7, 10 (2008).

Plaintiff's false imprisonment claim may survive, but only if her detention was "unlawful." O.C.G.A. § 51-7-20. <u>To defend against such a claim, an officer must show both the existence of probable cause and exigent circumstances that predicated the warrantless arrest and subsequent detention.</u> Collins v. Sadlo, 167 Ga. App. 317, 319, 306 S.E.2d 390, 392 (1983). The Georgia Code enumerates the only acceptable exigent bases for a warrantless arrest. See O.C.G.A. § 17-4 20(a)(1)(B). The statute includes a catch-all provision, permitting a warrantless arrest if there is "likely to be failure of justice for want of a judicial officer to issue a warrant." Id. The Georgia Supreme Court has interpreted this provision to mirror federal probable cause determinations, thus an "arrest… legal under federal law, [is] legal under state law." Durden v. State, 250 Ga. 325, 327, 297 S.E.2d 237, 240 (1982).  Exigent circumstances include situations where an offense is committed in the presence of the officer or within the officer's immediate knowledge, the offender is trying to escape, or if there is likely to be a failure of justice absent an immediate arrest. So, unlike claims for malicious arrest or malicious prosecution, the false-imprisonment claim is not defeated by probable cause, or even by a lack of malice

Georgia's Appellate Court provides a litany of caselaw and decisions that note when detentions based upon probable cause are reasonable and when they are not. On November 2, 2020, the Court of Appeals of Georgia decided Runnells v. State[i], which is instructive regarding reasonable suspicion states in reference to reasonable suspicion:  "In a second-tier investigatory detention, "a police officer, even in the absence of probable cause, may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity." State v. Banks, 223 Ga. App. 838, 839-840 (479 SE2d 168) (1996) (physical precedent only), Terry v. Ohio, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968). "A reasonable suspicion is more than a subjective, unparticularized suspicion or hunch," and "[t]he officer's action must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Rogers v. State, 206 Ga. App. 654, 659 (3) (426 SE2d 209) (1992) (citations and punctuation omitted).[iii].

[The Georgia] Supreme Court and this Court have held that a police officer witnessing a suspect fitting a pattern of criminal behavior in a high-crime area is not sufficient to provide a reasonable, articulable suspicion to detain the suspect. See Hughes, 269 Ga. at 260-261 (1) (second-tier detention unjustified and denial of motion to suppress reversed where suspect was driving in high-crime area, picked up man from street and continued driving slowly throughout

neighborhood back to where passenger was picked up; officer suspected that passenger was buying drugs from suspect based on pattern of behavior in neighborhood); Holmes v. State, 252 Ga. App. 286, 287-289 (556 SE2d 189) (2001) (second-tier detention unjustified and trial court's denial of motion to suppress reversed where suspect was walking through parking lot known for drug activity, briefly stopped at the window of a parked car, changed his walking direction after noticing the police, and appeared nervous when approached by the police);

Conversely, *United States v. James[* No. 19-11549 (11th Cir. Decided October 14, 2020*]*, provides a proper analysis of both the 4th amendment right to detain alongside actual exigent circumstances.  *In James,* officers after noticing suspicious behavior of the Appellant, chased and observed James throw a gun and a bag over a fence before they caught and detained him.  *See United States v. Franklin, 323 F.3d 1298, 1300, 1302 (11th Cir. 2003) (holding that police officers had reasonable suspicion to conduct a brief, investigatory stop where the defendant "ran away at full speed as soon as he saw the officers").*

Thus, James's flight, as the officers approached, provided the officer's reasonable suspicion to believe James may be involved in criminal activity.  It should be noted that other facts that are significant include (1) they were in the

middle of the road, (2) they were in a high-crime area, (3) James dropped his bike when he fled, and (4) **he threw a gun and bag over a fence as he fled**.

David Warth's wearing a costume beard and sunglasses, entered the athletic field of Brookwood High School, being approached by security who questioned him, choosing to leave without incident do not comport with the facts and analysis of James.  David Warth did not toss a weapon or commit an act that qualified as an exigent circumstance. And when stopped and questioned by police, he did not run. He attempted to communicate with Attorneys.

### a.  *Criminal Trespass Analysis*.

OCGA § 16-7-21 states:  A person commits the offense of criminal trespass when he or she knowingly and without authority:  **(1)** Enters upon the land or premises of another person … for an unlawful purpose;  (2) Enters upon the land or premises of another person … after receiving, prior to such entry, notice from the owner… that such entry is forbidden; or  **(3)** Remains upon the land or premises …of another person after receiving notice from the owner… to depart.

Plaintiff Warth has testified and provided evidence that shows he traveled to Brookwood HS to obtain school records and video concerning him. See Deposition of David Warth. Pages: 84 -86 referencing communications with the District and Jorge Gomez.

The e mails supporting his assertions have been provided in discovery and note the ongoing communication between the Warth family and the district officials who communicated that the IEP records must be obtained from the school itself.

Additionally, when stopped and questioned by school security, he did not [stay] or attempt to become argumentative.  He left voluntarily, which means that he did not violate the second prong of the statute.

Finally, David Warth did not remain on the campus for any length of time.  His choice to leave at the point of being questioned aligned with the statute itself.   He had not been detained by law enforcement & was not under arrest.

The Defendant's assertion that the school house is [essentially] always on alert violates _State v. Banks_, _Terry v. Ohio, 392 U. S. 1 (88 SCt 1868, 20 LE2d 889) (1968)_.  In short, David's appearance on campus, albeit strange, nervous or suspicious is not enough to state that he was committing a crime.

Defendant asserts that exigent circumstances existed requiring the arrest of David Warth.  Such is not the case factually.  David did not possess any form of drugs, illegal contraband, guns or knives.  He only possessed his cell phone and the colorful costume beard and sunglasses he purchased at a local store; none of the items being illegal to possess under any statute.

Most importantly, Davis Warth had not committed a crime in the presence of [any] police officers. And their suspicions, combined with his Autistic mannerisms

and nervous disposition, cannot qualify as probable cause to make an arrest under

*Holmes v. State, 252 Ga. App. 286, 287-289 (556 SE2d 189) (2001, 252 Ga. App.*

*286, 287-289 (556 SE2d 189) (2001)* .

Moreover, Defendant Williamson immediately [convicts] David Warth of stalking Brittney Dewey with no evidence or facts in connection. At the moment where Willaimson approaches David, he can be heard telling the other officers at 20 minutes 43 seconds: "he had a restraining order a couple of years ago and…he may have been going up there to harass her [Brittney Dewey]." The Defendant also jokes that David was in Special Ed. See body cam 2016 09 06 12 55-00.

Additionally, Williamson's roadside conviction is revealed throughout his deposition. The Defendant is questioned on page 37 as to who made the decision to arrest David:. At any event, there was a decision… 1 that was made out there to arrest David; is that 2 correct? A ..Correct. Yes sir. 4. Q. Were you the person that made that decision? 5. A…Yes, sir. I was.

On page 47 of the Deposition, the Defendant is questioned as to whether there was any form of communication about Brittney Dewey that would cause him to believe that Daavid was at the School for her:

| Question: By Reginald Winfrey | Answer: By David Willaimson |
|---|---|
| Okay. Now, during your encounter with David 18 on the side of the road in the neighborhood, he ever 19 mentioned Ms. Dewey's name, did he? | No, sir, he did not |

| | |
|---|---|
| He never mentioned the name of any teachers 22 at Brookwood High School, did he? | No, sir, I don't believe he did. |
| Page 48<br>He did not express any anger towards 6 Brittney Dewey? | No, but, again, he wouldn't answer any questions. |
| He did not express any desire to contact 19 Brittney Dewey? | He, I guess, I would think about that a 21 little differently. In my opinion, I think his desire 22 was his actions that day. So I think his overt 23 actions and his behavior and his disguise and where he 24 was caught, to me would be an attempt to contact Ms. 25 Dewey. |
| Page 49:<br>Okay. He didn't express any desire to 2 surveil Ms. Dewey? | Again, same answer. You know, with his 4 behavior and where he was caught. |
| And he did not express any desire to stalk 9 Brittney Dewey? | Again, sir, you know, based on his conduct, 11 the disguise, where he was caught, I think that was an 12 overt stalking attempt |
| Line 25 page 49 to line 1 page 50<br>He did not make any threats towards Brittney | Well, I would, in my opinion, I would say 3 that, you know, again, his behavior and his actions 4 was, you know, a threat even though she may not have 5 known about it at the time, but I would consider that 6 type of threat, yes |

   In the face of David asserting his 5th amendment Right to Remain Silent,

Officer Williamson intentionally [convicted] David Warth on the side of the road

of stalking Brittney Dewey and he has held on to [that] roadside conviction until

this very day. That creation of the crime in his own mind is the very nature of

malice. David did not commit the crime of trespass.  He left freely after the initial

encounter.  He did not threaten anyone.  Not a single officer saw him committing a

crime.  There was no evidence of stalking [anyone]. And Neither David's Autism

nor nervousness creates probable cause.  Finally, The withdrawal of the Plea based

upon there being no factual basis also meant that there was no probable cause at

the time of the arrest. Therefore, there are genuine issues of material fact that must

be taken to a jury in reference to the State Based claims of false arrest and false

imprisonment.

IV.    **Defendant is Not Immune From Liability for State Based False**
       **Arrest and False Imprisonment Claims**.

The plaintiff re-corporates the analysis for False Arrest and False Imprisonment

as to the above analysis.  The plaintiff reasserts that he did not trespass, committed

no crime in front of officers and there were no exigent circumstances leading to the

detention and subsequent arrest. Moreover, the Plaintiff asserts that the Malice of

the Defendant erodes both Official and Qualified Immunity. Finally, the

withdrawal of the Plea based upon there being no factual basis also meant that

there was no probable cause at the time of the arrest.

V. **Defendant Is Not Immune from Liability for State Based Malicious**
       **Prosecution**.

The plaintiff has effectively demonstrated sufficient evidence to support the

claim. Plaintiff has shown: (1) he was "prosecuted" for the offenses, meaning that

criminal proceedings were instituted against her, which occurred at booking; (2)

Plaintiff indicated that the record shows the offenses were instigated without

probable cause as there has never been a connection between the Plaintiff and the e

mail electronically or through criminal investigation or discovery; (3) the lack of

probable cause entitles him to an inference of malice; (4) the warrantless arrest was

not constitutionally valid; (5) the case against him was favorably terminated when

it was dismissed by prosecutors; and (6) he suffered harm as a result, namely his

being incarcerated for 3.5 years, his college career being de-railed and his Autism

being severely impacted by the chain of events caused by the Defendant

Willaimson." Trident Wholesale, Inc. v. Brown, 370 Ga. App. 505, 509, 897

S.E.2d, 610, 615 (2024). A lack of probable cause is demonstrated when "the

circumstances are such 'as to satisfy a reasonable man that the accuser had no

ground for proceeding but his desire to injure the accused.'" Id. at 509-10 (quoting

O.C.G.A. § 51-7-3). Further, the third element need not be affirmatively asserted,

because "[m]alice sufficient to sustain a recovery may be inferred from want of

probable cause." Hicks v. Brantley, 102 Ga. 264, 268 (1897). The plaintiff need

only point to existing evidence in the record to survive summary judgment and is

not required to provide additional evidence to support his claim. Celotex Corp.,

477 U.S. at 324.

**In malicious prosecution actions, "want of probable cause is a question for**

**the jury**, under direction of the court" and is a "mixed question of law and fact."

Melton v. LaCalamito, 158 Ga. App. 820, 823, 282 S.E.2d 393, 397 (1981)

(internal punctuation omitted). "Whether the circumstances alleged to show probable cause existed is a matter of fact, to be determined by the jury, but whether they rise to probable cause is a question of law for the court." Id.

Defendant may have had reasonable suspicion related to the e mail received by Dewy, but probable cause to support those charges does not exist. Defendant wrote within his own notes that there was no evidence connecting David Warth to the e mail received by Brittney Dewy. Therefore, charging Plaintiff with the offenses of staking equates to "mere conjecture" and "unfounded suspicion" Georgia courts caution against. Melton, 158 Ga. App. at 820. Because Plaintiff sufficiently alleged a factual basis for her claim of malicious prosecution, genuine issues of material fact remain.

## VI. <u>Punitive Damages are Valid for Both State and Federal Claims.</u>

Punitive damages are recoverable in Georgia if a plaintiff can prove by clear and convincing evidence that the defendant's actions showed "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51 12-5.1(b). The showing Plaintiff must make to prove his malicious prosecution and false arrest claims mirrors those required for the award of punitive damages. Therefore, the Punitive damages claim should also proceed to a Jury alongside the Federal & State claims.

## VII.  **Conclusion:**

The Court should deny the Motion for Summary Judgment.  There are genuine

Issues of Material Fact that should be heard by a Jury on all remaining Federal and

State based claims.

This February 12, 2025

**/s/ Kamau K. Mason**
Kamau K. Mason, Esq.
Georgia Bar No. 823438

Law Office of Kamau K Mason & Assoc.
3036 Woodrow Drive
Lithonia GA 30038
678.464.4618 phone
kkmason@yahoo.com

**/s/Reginald L. Winfrey, Esq.___**
Reginald L. Winfrey, Esq.
Georgia Bar No. 770460

Winfrey & Associates, LLC
P.O. Box 18862
Atlanta, GA 31126  470-400-9461

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have filed the Response to the Defendant's Motion for

Summary Judgment and Answers to Statements of material Facts upon Defendants'

attorneys of record:

Stephen Pereira, spereira@pkknlaw.com

Jaaonne J. Gadson-Jackson, jjackson@pkknlaw.com

This February 12, 2025.

**/ss/ Kamau K. Mason, Esq.**
Kamau K. Mason, Esq. 823438
For the Plaintiff

Law Offices of Kamau K. Mason & Associates
3036 Woodrow Drive
Lithonia, GA 30038
678.464.4618 phone
678.526.5310 fax
kkmason@yahoo.com

**/s/Reginald L. Winfrey, Esq.___**
Reginald L. Winfrey, Esq.
Georgia Bar No. 770460

Winfrey & Associates, LLC
P.O. Box 18862
Atlanta, GA 31126
470-400-9461

## Certificate of Compliance

This document certifies that the above filing[s] complies with the 11th Circuit Rules of Civil Procedure. The Document Font size is 14 Point Times.

    A. The MOTION and / or filing neither exceeds the maximum number of words nor pages relative to analysis beginning at the Standard of Review.

Submitted this February 12, 2025,

**/s/Kamau K. Mason**
Kamau K. Mason, Esq. for Plaintiffs
GA BAR NO.: 823438

Law Offices of Kamau K. Mason & Associates
3036 Woodrow Drive
Lithonia GA 30038
Phone: 678.464.4618
Fax:    678.526.5310
kkmason@yahoo.com

**/s/Reginald L. Winfrey, Esq.___**
Reginald L. Winfrey, Esq.
Georgia Bar No. 770460

Winfrey & Associates, LLC
P.O. Box 18862
Atlanta, GA 31126
470-400-9461